846 A.2d 1244

KONA MIAH, PLAINTIFF–RESPONDENT, v. SHIRAJ AHMED, DEFENDANT–APPELLANT.

Argued January 20, 2004—Decided May 11, 2004.

*John A. Bart,* argued the cause for appellant (*Northeast New Jersey Legal Services*; *Mr. Bart,* attorney, of counsel and on the brief).

*Connie Pascale,* argued the cause for *amicus curiae* Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, *Legal Services of New Jersey*; *Mr. Pascale, Kristin Mateo,* and *Mr. Miller,* attorneys, on the brief).

*Paul Fernandez,* argued the cause for respondent (*Paul Fernandez & Associates,* attorneys; *Jonathan J. Mincis,* attorney, on the letter brief).

JUSTICE ZAZZALI delivered the opinion of the Court.

In this case a landlord evicted his tenant from an attic apartment after the municipality in which the apartment was located determined that the unit violated a local zoning ordinance. Because the eviction resulted from zoning-ordinance enforcement for an illegal apartment, *N.J.S.A.* 2A:18–61.1h required the landlord to provide the displaced tenant with relocation-assistance benefits five days prior to removal. We granted certification to determine how the amount of relocation assistance should be calculated and whether that amount is subject to setoff for unpaid rent and other that the landlord might have against the tenant. 177 *N.J.* 493, 828 *A.2d* 920 (2003).

In view of the unambiguous statutory language, we conclude that *N.J.S.A.* 2A:18–61.1h entitles displaced tenants to relocation assistance in an amount equal to six times the tenant's monthly rent. We also hold that the public-policy objectives reflected in *N.J.S.A.* 2A:18–61.1h preclude reductions or setoffs for unpaid rent or other damages.

I.

At the outset, we note that the incomplete factual record in this appeal obscures an already complex procedural history. Nonetheless, the following summary presents the essential elements of what transpired.

Defendant Shiraj Ahmed (tenant) and his wife, Denise Ahmed, rented an attic apartment in Paterson for $450 per month from plaintiff Kona Miah (landlord). The couple had lived in the apartment for approximately seven to eight years when the City of Paterson determined that the dwelling violated a local zoning ordinance. After learning that the apartment was illegal, the landlord sent a notice to the tenant in November 2001, indicating that the tenant had to vacate the premises by March 2002, and informing him that he may be entitled to relocation assistance. It is unclear from the record whether the tenant received that notice and, if so, when that notice was received.

At some point thereafter, the tenant stopped paying rent while continuing to reside in the apartment. In response, the landlord filed a complaint in the Special Civil Part against the tenant for unjust enrichment based on the tenant's failure to pay rent. The face of that complaint suggests that it was served on the tenant in January 2002.

When the tenant had not vacated the apartment by March 2002, the landlord filed a separate eviction complaint seeking the tenant's removal. Although unclear from the record, the trial court apparently stayed the disposition of the landlord's Special Civil Part action pending resolution of the eviction proceeding. On April 4 and 5, 2002, a trial was held with respect to the eviction action. Neither the tenant nor his wife appeared on the first day of trial. The following day, April 5, Mrs. Ahmed, the tenant's wife, appeared without the assistance of counsel. She testified that she suffered from lung cancer and did not attend the April 4 hearing because she recently had been released from the hospital. She stated that after learning that the apartment was illegal, she located three available apartments. She explained, however, that she lost the opportunity to rent those apartments because the landlord failed to provide her with relocation assistance.

Interpreting *N.J.S.A.* 2A:18–61.1h (section h) to require a lump-sum payment equal to six times the monthly rent, the trial court ordered the landlord to deposit $2700 with the court as a condition precedent to the entry of a Warrant of Removal. In compliance with that order, the landlord promptly posted the $2700, and a Warrant of Removal was issued with a lockout date of May 2, 2002.

On May 2, 2002, the day of the lockout, the tenant filed an order to show cause seeking a stay of the eviction because he had not received the relocation-assistance funds. During the hearing that ensued, the tenant informed the trial court that his wife had died of lung cancer the prior week. The tenant explained that because his wife was primarily responsible for matters relating to the

apartment, he was unaware that $2700 had been on deposit with the court clerk since April.

After learning that the tenant never received the relocation funds, the trial court ordered immediate dispersal of the money and gave the tenant an additional seven days to vacate the premises. In issuing that order, the court denied the landlord's request for a stay pending a hearing to determine the tenant's actual relocation expenses and pending resolution of the landlord's unjust-enrichment claim. Because the court interpreted section h to require a fixed payment equal to six times the tenant's monthly rent, it determined that an actual-expense hearing was unnecessary. The court also concluded that holding the funds for a determination of the landlord's separate claim for unpaid rent "would fly in the face of the purpose of the statute." To ensure that the tenant's receipt of the funds and his eviction were not subject to further delays, the trial judge took steps to facilitate release of the money by directing his secretary to contact the court's finance department.

On May 3, 2002, the court clerk issued a check to the tenant for $2,700. That same day, the landlord made a motion for emergent relief before the Appellate Division. The appellate court granted the motion and entered an order staying the turnover of the relocation funds pending determination of the landlord's appeal. However, by the time the order was entered, the court clerk already had dispersed the money to the tenant, who had cashed the check at a check-cashing store. On May 10, 2002, the Warrant of Removal was executed but, by that date, the tenant had vacated the apartment.

On May 28, 2002, the tenant filed a motion with the Appellate Division, requesting that that court vacate its May 3 order staying the dispersal of the relocation-assistance benefits. In an order dated June 19, 2002, the panel denied the tenant's motion and referred the matter back to the trial court to "effectuate a restoration of the funds pending a determination of this appeal." What happened on remand is unclear. It appears, however, that

the trial court directed that the funds be returned to the clerk of the court, but then stayed the entry of that order to permit the tenant to appeal.

Thereafter, in a published opinion critical of the trial court's conduct, the Appellate Division reversed. *Miah v. Ahmed,* 359 *N.J.Super.* 151, 819 *A.*2d 440 (2003). The panel held that section h limited the landlord's obligation to relocation expenses actually incurred by the tenant up to, but not exceeding, six months of rent. *Id.* at 158, 819 *A.*2d at 444. In addition, the appellate court found error in the trial court's refusal to allow the landlord to offset the relocation-assistance payment by the amount of past-due rent owed by the tenant. *Id.* at 156, 819 *A.*2d at 443. The panel remanded the case to a different judge for further findings on the actual costs of the tenant's relocation. *Id.* at 158, 819 *A.*2d at 444.

Because of the substantial public importance of the questions presented in this case, we granted certification. 177 *N.J.* 493, 828 *A.*2d 920 (2003). We also granted *amicus curiae* status to Legal Services of New Jersey.

## II.

### A.

In 1993, the Legislature amended the Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1 to –61.12 (Act), in response to a ruling by the Commissioner of the Department of Community Affairs (DCA) that neither the Relocation Assistance Act, *N.J.S.A.* 20:4–1 to –22, nor the Relocation Assistance Law of 1967, *N.J.S.A.* 52:31B–1 to –12, affords relocation-assistance benefits to a tenant who is evicted as a result of zoning-ordinance enforcement for an illegal occupancy. *L.* 1993, *c.* 342; *Statement to Assembly Bill No. 2267,* at 3 (Feb. 8, 1993). The 1993 amendment expanded the permissible grounds for eviction under *N.J.S.A.* 2A:18–61.1(g) to include the correction of "an illegal occupancy because [the landlord] has been cited by local or State ... zoning officers and it is unfeasible to correct such illegal occupancy without removing the tenant[.]" *L.*

1993, c. 342, § 1. In granting landlords that authority, however, the Legislature imposed certain obligations on them to assist soon-to-be-evicted tenants by adding section h to the Act. *Id.* § 4.

In relevant part, section h provides:

a. If a residential tenant is displaced because of an illegal occupancy in a residential rental premises ... and the municipality in which the rental premises is located has not enacted an ordinance pursuant to section 3 of P.L.1993, c. 342 (C.2A:18–61.1g), the displaced residential tenant *shall be entitled to reimbursement for relocation expenses* from the owner in *an amount equal to six times the monthly rental* paid by the displaced person.

b. Payment by the owner shall be due five days prior to the removal of the displaced tenant....

[(Emphasis added.)]

The critical question in this appeal is whether the emphasized text of section h entitles the displaced tenant to a fixed payment equaling six months of rent or to payment for out-of-pocket expenses not to exceed an amount equal to six times the monthly rent.[1]

Focusing on the Legislature's use of the word "reimbursement" in section h, the Appellate Division applied a common meaning of the verb "reimburse," which is defined as " '[t]o pay back, to make restoration, to repay that expended; to indemnify, or make whole.' " *Miah, supra,* 359 *N.J.Super.* at 157, 819 *A.*2d at 444 (quoting *Black's Law Dictionary,* 1452 (4th ed. 1957)) (alteration in original). In so doing, the appellate court concluded that it was "satisfied ... that any relocation expenses must be based upon actual out-of-pocket expenses by the tenant." *Id.* at 158, 819 *A.*2d

---

[1] As noted by the Appellate Division, the record does not indicate whether the City of Paterson enacted an ordinance pursuant to *N.J.S.A.* 2A:18–61.1g (section g). *Miah, supra,* 359 *N.J.Super.* at 157, 819 *A.*2d at 444. That section authorizes a municipality to enact an ordinance entitling tenants to relocation assistance when zoning-ordinance enforcement for an illegal occupancy forms the basis for the eviction. *N.J.S.A.* 2A:18–61.1g(a). When a municipality has not exercised its right under section g, section h applies. Because the trial court and Appellate Division applied section h and because the parties have briefed and argued that section, we assume for purposes of this opinion that the City of Paterson does not have an ordinance providing for relocation assistance in the circumstances presented here.

at 444. According to the panel, a contrary interpretation would produce the unfair result of confiscating "a person's funds to require payment of an amount more than necessary[.]" *Id.* at 157, 819 *A.*2d at 444.

The tenant and Legal Services of New Jersey contend that by modifying the word "reimbursement" with the phrase "equal to" and by requiring prepayment, the Legislature provided for a lump-sum payment equal to six times the monthly rent. Thus, they argue that the appellate court's construction of section h is not supported by the statutory text. In addition, they claim that the panel's flawed interpretation contravenes the Legislature's overriding goal of establishing a simple method for eliminating illegal apartments and for protecting displaced tenants.

### B.

Consistent with traditional canons of statutory construction, we begin our analysis with the plain language of the statute. *Merin v. Maglaki,* 126 *N.J.* 430, 434, 599 *A.*2d 1256, 1258 (1992). In the absence of contrary legislative intent, "[s]uch language should be given its ordinary meaning." *Id.* at 434–35, 599 *A.*2d at 1258. When the meaning of the statutory language is clear and unambiguous, our duty is to enforce the statute as written. *Bunk v. Port Auth. of N.Y. & N.J.,* 144 *N.J.* 176, 194, 676 *A.*2d 118, 127 (1996).

As noted, subsection (a) of section h entitles a residential tenant displaced as a result of zoning-code enforcement concerning an illegal apartment "to reimbursement for relocation expenses from the [landlord] in an amount equal to six times the monthly rental paid by the displaced person." The phrase "in an amount equal to six times the monthly rent[ ]" demonstrates that the Legislature sought to establish a defined sum that would not be subject to a trial court's discretion and would not depend on the tenant's out-of-pocket expenses. More specifically, the term "equal to" constitutes an explicit and unambiguous expression of the legislative intent to fix a precise amount.

That intent is further evidenced by the prepayment requirement in subsection (b). Pursuant to subsection (b), the payment provided for ·in subsection (a) must be made "five days prior" to the tenant's removal. *N.J.S.A.* 2A:18–61.1h(b). To read subsection (a) as requiring reimbursement for actual expenses incurred renders compliance with subsection (b) a difficult if not impossible task for the obvious reason that calculation of actual expenses before the moving date often is not feasible. The plain language of section h, when read in an integrated way, thus guarantees that the displaced tenant will receive a predetermined amount of benefits five days prior to eviction.

■ Looking only at subsection (a), the Appellate Division relied on the word "reimbursement" to conclude that the Legislature intended to limit the landlord's obligation to actual relocation expenses incurred by the tenant. *Miah, supra,* 359 *N.J.Super.* at 158, 819 *A.*2d at 444. Viewed in isolation, the Legislature's use of "reimbursement" lends some support for the Appellate Division's conclusion. However, by focusing exclusively on the word "reimbursement," the panel disregarded the plain meaning of other words and phrases employed in subsection (a) and effectively excised subsection (b) from the statute. That approach is inconsistent with the well-established canon of statutory construction that " 'a statute is to be interpreted in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.' " *Chasin v. Montclair State Univ.,* 159 *N.J.* 418, 427, 732 *A.*2d 457, 462 (1999) (quoting *Zimmerman v. Mun. Clerk of Tp. of Berkeley,* 201 *N.J.Super.* 363, 368, 493 *A.*2d 62, 65 (App.Div.1985)).

In line with that canon of statutory construction, the term "reimbursement" must be understood in the context of the other language employed in subsection (a). As we have explained in the past, "[T]he meaning of words [used in a statute] may be indicated and controlled by those [words] with which they are associated." *Germann v. Matriss,* 55 *N.J.* 193, 220, 260 *A.*2d 825, 839 (1970).

By modifying the word "reimbursement" with "in an amount equal to," the Legislature evinced an intent to fix the amount of relocation assistance at six times the monthly rent. So viewed in the context of the other language employed in subsection (a) as well as subsection (b)'s prepayment mandate, the word "reimbursement" cannot have the meaning ascribed to it by the Appellate Division.

The appellate court also erred by reading into section h language that the Legislature did not include. Construing "six times the monthly rental" as a cap for the amount of reimbursable out-of-pocket expenses, the panel inferred that the Legislature intended to modify "in an amount equal to" with the phrase "up to" or "not in excess of." Had the Legislature intended that result, the Legislature could have expressly said so. In fact, that is exactly what the Legislature did in section g, which was enacted in conjunction with section h. *L.* 1993, *c.* 342, § 3. Section g authorizes a municipality to enact an ordinance requiring landlords to provide relocation-assistance benefits to tenants evicted as a result of zoning-code enforcement activity for an illegal occupancy. *N.J.S.A.* 2A:18–61.1g(a). Pursuant to subsection (c) of that section, municipalities that have enacted such an ordinance also "may require that an additional fine for zoning or housing code violation for an illegal occupancy, *up to an amount equal to six times the monthly rental* paid by the displaced person, be paid to the municipality by the [landlord] of the structure." *N.J.S.A.* 2A:18–61.1g(c) (emphasis added). The inclusion of the phrase "up to" in section g suggests that the Legislature deliberately excluded the phrase from section h so as to fix relocation-assistance payments at a non-discretionary sum. *See GE Solid State, Inc. v. Dir., Div. of Taxation,* 132 *N.J.* 298, 308, 625 *A.*2d 468, 473 (1993) (explaining that when "the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded").

We thus conclude that under a straightforward reading of section h, tenants who are evicted from an illegal apartment are

entitled to a lump-sum payment calculated at six times the monthly rent.

## C.

Although we believe that the primary question presented in this case is easily resolvable under a textual analysis, we extend our inquiry beyond the language used in the statute to remove any doubt that might remain regarding the Legislature's intent. *See State v. Hoffman,* 149 *N.J.* 564, 578, 695 *A.*2d 236, 243 (1997) (noting that courts may rely on extrinsic aids when legislative intent cannot be gleaned from statutory text). In this case, the legislative history of section h, agency interpretation, the remedial goals of the section's statutory scheme, and considerations of public policy are consistent with our reading of the statutory text.

Beginning with the legislative history, the drafting process that brought about section h indicates that the Legislature intended to afford tenants the security of a lump-sum payment equal to six times the monthly rent. One proposal for addressing evictions stemming from zoning-ordinance enforcement, Assembly Bill No. 2267, would have supplanted the protections afforded by the Relocation Assistance Act to entitle displaced tenants to *"actual reasonable moving expenses incurred"* with no limit on that amount. *Assembly Bill No. 2267,* at 1 (Feb. 8, 1993) (emphasis added). That bill would have required "adequate documentation" of expenses from the tenant as a precondition to receipt of payment, and would have afforded the landlord ten days after receipt of the tenant's expense statement to turn over the relocation funds. *Id.* at 1–2. The Legislature, however, eliminated those provisions in favor of a simpler approach, *i.e.,* prepayment of an amount equal to six times the tenant's monthly rent. *L.* 1993, *c.* 342, § 4. The contemplation and rejection of language expressly limiting relocation-assistance benefits to out-of-pocket expenses leaves little doubt that the Legislature deliberately chose the phrase "in an amount equal to" in the final statute to establish a

precise amount without concern for the actual costs incurred by the tenant.

DCA's interpretation of section h provides even further support for that conclusion. DCA is the agency charged with the administration of state housing programs, including the administration of the Anti–Eviction Act. *N.J.S.A.* 2A:18–61.12. In a May 1995 memorandum to its relocation officers, the agency interpreted the 1993 amendments to the Act. Memorandum from James Colello, Jr., Administrator, Relocation Assistance Program (May 15, 1995). That memorandum explains that under the amended version of the Act, tenants displaced as a result of zoning-ordinance enforcement are *"entitled to a lump sum equal to six times the monthly rent* and the owner of the structure is liable for that amount." *Id.* at 1 (emphasis added). Although we are not bound by an agency's interpretation of a statute, we generally accord it substantial deference when the Legislature has entrusted the agency with that statute's enforcement. *Matturri v. Bd. of Trs. of the Judicial Ret. Sys.,* 173 *N.J.* 368, 381, 802 *A.*2d 496, 504 (2002). DCA's reading of section h thus offers persuasive evidence that the Legislature intended to provide displaced tenants with a defined payment.

Our textual analysis finds additional reinforcement from the remedial objectives behind section h. Illegal apartments, which often take the form of impermissible attic, basement, and garage units, pose significant fire, health, and safety risks that extend well beyond the premises. *See* Cathy Bugman, *Bound Brook Landlord Faces Jail after Fire: Also Must Pay Fines for Overcrowding, Star–Ledger,* Apr. 10, 2003, at 25 (Somerset & Hunterdon ed.) (reporting fire caused by "overheated extension cord" that fed electricity to illegal attic apartment in two-family home housing twenty-two people); Michael Daigle, *Laying Low, No Place to Go: Climbing Costs Lead to Illegal Housing, Daily Record,* Dec. 15, 2002, at A1 (reporting local officials as describing overcrowding caused by illegal apartments as safety and health issue whereas leader of community group views it as quality-of-life

issue); *Overcrowding Sparks Cultural Friction, Asbury Park Press,* Jan. 12, 2003, at A2 (reporting borough's receipt of complaints from residents about adverse effects of overcrowding on quality of life).

To reduce those risks, municipalities have increased efforts to enforce local zoning ordinances that preclude such dwellings, a course that results in the displacement of numerous tenants. By equipping those residents with funds to relocate, section h is designed to protect evicted tenants from the hardships of displacement while facilitating municipal efforts to weed out illegal apartments. Consistent with those remedial goals, section h, like the Anti–Eviction Act, must be liberally construed in favor of the tenant. *See 447 Assocs. v. Miranda,* 115 *N.J.* 522, 529, 559 *A.2d* 1362, 1365–66 (1989) (describing Anti–Eviction Act as "remedial legislation deserving of liberal construction").

A reading of section h that entitles displaced tenants to a lump-sum payment equal to six times the monthly rent, as opposed to payment for actual expenses incurred, is faithful to that mandate. Because it is predictable, a prepayment of a fixed amount enables a low-income tenant to plan for relocation and secure safe housing prior to the lockout date. By contrast, construing the statute as limiting relocation assistance to out-of-pocket expenses generates uncertainty for the tenant. That interpretation of section h exposes the tenant to the added risk that the landlord may contest the amount of actual expenses, thereby prolonging the relocation process and subjecting the tenant and the public to the hazards of illegal apartments for longer than necessary. Those consequences, which hamper section h's remedial goals, can be avoided by reading the statute as setting the relocation-assistance payment at a fixed amount equal to six times the monthly rent.

As an additional basis for its interpretation of section h, the Appellate Division reasoned that to construe the statute as requiring a lump-sum payment fixed at six times the monthly rent would penalize the landlord unfairly. *Miah, supra,* 359 *N.J.Super.* at 157–58, 819 *A.2d* at 444. Although in some circumstances our

interpretation will require the landlord to pay more than the tenant's actual expenses, that result is neither unreasonable nor inequitable. By advertising a space as available for rent, it is the landlord that is responsible for an illegal occupancy and for the corollary threat to the health, safety, and welfare of the tenant and the community at large. Indeed, the Legislature has recognized that greater penalties for such conduct may be necessary. Specifically, subsection (c) of section g authorizes municipalities to impose "an additional fine" on the landlord over and above the relocation-assistance payment to the tenant. *N.J.S.A.* 2A:18–61.1g(c). From a textual perspective, the fact that the Legislature employed the phrase "additional fine" suggests that it also deemed the payment of relocation assistance to serve both as a remedial measure and as a penalty. Furthermore, because the monetary penalties permitted under subsection (c) make renting illegal apartments a less profitable business, they have a deterrent effect. Section h's lump-sum payment of six times the monthly rent accomplishes the same end. Viewing section h in that light, it is reasonable to conclude that the Legislature intended the section to have penal overtones.

In sum, although we reach our holding based on the plain meaning of the statutory text, the application of the above rules of construction demonstrate that the Appellate Division erred when it held that the landlord is only liable for an amount "up to," rather than "equal to," six months of rent.

## III.

Having resolved the dispute over the calculation of relocation-assistance benefits, we turn to the question of whether a landlord can deduct past-due rent or other money owed by the tenant from the relocation-assistance payment.

At trial, the landlord argued that the court should delay its issuance of the $2700 to the tenant until the landlord's unjust-enrichment action had been resolved. The landlord asserted that he was entitled to deduct from his relocation-assistance obligation

any damages owed by the tenant as a result of that separate claim. The trial court denied that request on the ground that such action would "fly in the face of the purpose of the statute" in as much as it would delay the tenant's receipt of money necessary for relocation. The Appellate Division disagreed, concluding that "the tenant was not entitled to live rent free, even if there was an illegal tenancy[.]" *Miah, supra,* 359 *N.J.Super.* at 156, 819 *A.*2d at 443 (citing *McQueen v. Brown,* 342 *N.J.Super.* 120, 129, 775 *A.*2d 748, 753 (App.Div.2001), *aff'd o.b.,* 175 *N.J.* 200, 814 *A.*2d 1042 (2002)).

 The general principles governing setoff indicate that it should not be permitted here. Setoff "involves an affirmative recovery on a claim that may be independent of the transaction upon which the plaintiff's claim is based." *Beneficial Fin. Co. of Atl. City v. Swaggerty,* 86 *N.J.* 602, 609, 432 *A.*2d 512, 516 (1981). Unless provided by statute, setoff is an equitable right that "may be restricted by judicial limitations imposed to uphold a state policy protecting [a certain class of litigants]." 20 *Am. Jur. 2d Counterclaim, Recoupment, and Setoff* § 6 (1995).

 Section h is silent with respect to the landlord's right to set off the relocation-assistance payment. Accordingly, whether setoff should be permitted in these circumstances depends on the equities present. Here, the trial court properly concluded that the public-policy goals underpinning section h preclude setoff. Application of the doctrine in these circumstances would postpone issuance of the relocation-assistance payment, reduce the amount available to the displaced tenant, and extend the length of the eviction proceeding. That, in turn, would delay the tenant's relocation and prolong the landlord's noncompliance with zoning ordinances in direct conflict with the legislative policies underlying section h. Public policy thus dictates that a landlord should not be permitted to deduct from the relocation-assistance obligation past-due rent or other damages owed by the tenant.

The landlord is not without a remedy. He can advance his claim against the tenant in an independent plenary action, which is

exactly what the landlord did here. Although a tenant may be unable to satisfy the resultant judgment, we believe that in those circumstances the Legislature's concerns for protecting displaced tenants and ensuring compliance with municipal ordinances trump the landlord's interest in receiving payment for past-due rent for what was, after all, an illegal apartment. Because the only issue before us is the landlord's right to a setoff, we do not address the merits of his Special Civil Part action or the applicability of *McQueen, supra,* 342 *N.J.Super.* 120, 775 *A.*2d 748 (concluding that landlord's failure to obtain certificate of occupancy does not permit tenant to occupy apartment rent-free).

## IV.

Finally, we discuss briefly the Appellate Division's commentary on the trial court's conduct.

To the extent that the Appellate Division was troubled by the trial court's failure to follow the panel's instructions, that unease is understandable. *See In re Plainfield–Union Water Co.,* 14 *N.J.* 296, 302–03, 102 *A.*2d 1, 4–5 (1954) (explaining that trial courts must obey mandates of appellate courts, even if erroneous).

The panel also commented that the trial court improperly provided "special assistance" to the tenant when it intervened in the payment process to expedite the issuance of the check. *Miah, supra,* 359 *N.J.Super.* at 154, 819 *A.*2d at 442. Although the record does not disclose why the trial court expedited the payment, we note that the tenant's wife died only days before the May 2 court appearance. Faced with a recently widowed tenant, the trial court might have intervened out of compassion. In addition, at the May 2 hearing, the trial court expressed surprise upon learning that the tenant had not yet received his relocation assistance. In line with its reading of the statute, the court concluded that it could not order the tenant's removal until the tenant received the relocation funds. Thus, the court reasonably might have viewed the immediate release of the funds as a means

for settling a protracted dispute and getting a tenant out of an illegal apartment.

### V.

We conclude that *N.J.S.A.* 2A:18–61.1h requires a landlord to provide tenants who are evicted as a result of a zoning-ordinance violation for an illegal occupancy with a fixed amount of relocation-assistance benefits based on six-times the monthly rent. That sum must be paid five days prior to eviction. We also hold that a landlord cannot reduce the relocation-assistance obligation by the amount of past-due rent or other damages owed by the tenant.

Accordingly, we reverse the judgment of the Appellate Division and reinstate the trial court's order directing payment of $2700 to the tenant. We also vacate the stay of the landlord's Special Civil Part action against the tenant and remand that cause for further proceedings.

*For reversal and reinstatement*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed*—None.