888 A.2d 499

RAMSEY TEACHERS ASSOCIATION, PETITIONER–APPELLANT, v. BOARD OF EDUCATION OF THE BOROUGH OF RAMSEY, BERGEN COUNTY, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 9, 2005—Decided January 9, 2006.

242

Before Judges COBURN, COLLESTER and LISA.

*Louis P. Bucceri* argued the cause for appellant (*Bucceri & Pincus,* attorneys; *Mr. Bucceri,* of counsel and on the brief).

*Robert M. Jacobs* argued the cause for respondent Board of Education of the Borough of Ramsey (*Winne, Banta, Hetherington, Basralian & Kahn,* attorneys; *Mr. Jacobs,* of counsel and on the brief; *Christine R. Smith,* on the brief).

*Peter C. Harvey,* Attorney General, attorney for respondent State Board of Education (*Michael Haas,* Assistant Attorney General, of counsel; *Cindy M. Campbell,* Deputy Attorney General, on the statement in lieu of brief).

*John J. Burns* argued the cause amicus curiae New Jersey School Boards Association (*Cynthia J. Jahn,* General Counsel/Assistant Executive Director, attorney; *Mr. Burns,* on the brief).

*Zazzali, Fagella, Nowak, Kleinbaum & Friedman,* attorneys for amicus curiae New Jersey Education Association (*Richard A. Friedman* and *Kathleen Naprstek Cerisano,* on the brief).

The opinion of the court was delivered by

LISA, J.A.D.

*N.J.S.A.* 18A:40–3.3, which became effective on July 1, 1999, provides:

> A school district shall only utilize or employ for the provision of nursing services in the public schools of the district persons holding an educational services certificate with an endorsement as a school nurse issued by the State Board of Examiners, except for those non-nursing personnel who are otherwise authorized by statute or regulation to perform specific health related services.... No person shall be issued such certificate unless the person is licensed as a registered nurse ... and meets all of the requirements prescribed by the board for a nursing

endorsement. A school district may supplement the services provided by the certified school nurse with non-certified nurses, provided that the non-certified nurse is assigned to the same school building or school complex as the certified school nurse.

The issue raised by this appeal is whether the statute requires the physical presence in the school building or complex of a certified school nurse at all times during which a non-certified nurse is regularly scheduled to perform duties supplementing the services provided by the certified school nurse. The State Board of Education (State Board) determined that physical presence is not required, stressing, however, that the non-certified nurse may not provide any services required by statute or regulation to be provided by a certified school nurse. We agree and affirm.

The facts are undisputed. For the 1999–2000 school year the Board of Education for the Ramsey School District (District) employed two full-time certified school nurses, who were assigned to its middle and high schools, and three part-time certified school nurses for each of its three elementary schools. Beverly van den Berg was the certified school nurse assigned to the Tisdale School, where she was regularly scheduled to be present between 8:45 a.m. and 12:15 p.m. daily. On October 14, 1999, the District hired Brenda Calabrese as a "school health aide" to work in the Tisdale School daily from 12:00 p.m. to 3:00 p.m. Calabrese held a license from the State Board of Nursing as a registered nurse, but did not hold a school nurse endorsement.

The school health aide job description required the individual to hold a registered nurse's license. It provided that the individual would independently perform only those tasks for which he or she was authorized by statute or regulation. It further authorized the individual to assist the certified school nurse in performing those tasks required by statute or regulation to be performed only by a certified school nurse.

Thus, both van den Berg and Calabrese were registered nurses, with the same education and training in nursing and the same licensure. A certified school nurse additionally holds an endorsement issued by the Board of Examiners as a school nurse.

*N.J.A.C.* 6A:9–13.3. That endorsement authorizes the holder to perform nursing services and teach in health-related areas in public schools. Eligibility for the endorsement requires, in addition to holding a registered nurse license, certain educational requirements in the school nursing field, in such areas as physical assessments, human growth and development, fundamentals of substance abuse and dependency, methods of teaching health and curriculum development, guidance and counseling, and school law, as well as student teaching, including experience in both a school nurse office and classroom. *Ibid.* The regulations also provide for another endorsement, school nurse/non-instructional, which does not authorize the holder to teach in health-related areas. *N.J.A.C.* 6A:9–13.4. This endorsement generally requires fewer additional education credits, and does not require credits in methods of teaching health, including curriculum development, nor student teaching.

Every board of education is required to hire at least one certified school nurse. *N.J.S.A.* 18A:40–1. The statute contains no requirement that the position be full-time. Pursuant to its rule-making authority, *see N.J.S.A.* 18A:40–3.6, the State Board requires each district to appoint at least one full-time equivalent certified school nurse. *N.J.A.C.* 6A:16–2.1(e). The regulations further delineate those nursing services that must be provided by a certified school nurse and those that may be provided by a non-certified nurse within the scope of the license from the State Board of Nursing. *N.J.A.C.* 6A:16–2.1(e), (f). For example, only a certified school nurse is authorized to instruct teachers on communicable diseases and other health concerns, pursuant to *N.J.S.A.* 18A:40–3; to train, direct and supervise the emergency administration of epinephrine for school staff designated by the certified school nurse to serve as delegates, pursuant to *N.J.S.A.* 18A:40–12.6; and to direct and supervise the health services activities of any school staff to whom the certified school nurse has delegated a nursing task. *Ibid.*

At no time did Calabrese perform services required to be provided only by a certified school nurse.

Each district must develop a "school nursing services plan," with standards and criteria prescribed for assigning certified and non-certified nurses to school buildings or groups of buildings. *N.J.A.C.* 6A:16–2.1(f)1. The plan, developed in consultation with the school physician, must be approved by the district board of education and ultimately approved by the county superintendent of schools. *N.J.A.C.* 6A:16–2.1(f)2, 3.

Appellant, Ramsey Teachers Association, is the collective bargaining representative for all non-supervisory certified employees of the District, including the certified school nurses. Certified school nurses are "teaching staff members," *N.J.S.A.* 18A:1–1, thus entitling them to tenure rights, *N.J.S.A.* 18A:28–5, seniority rights, *N.J.S.A.* 18A:28–13, and full teacher salary guide status, *N.J.S.A.* 18A:29–4.2. Non-certified nurses are not covered by these statutory provisions.

Appellant initiated this action by filing a petition with the Commissioner of Education, alleging that *N.J.S.A.* 18A:40–3.3 requires nursing functions in the public schools to be performed by certified school nurses and that a district may not supplement those services with an uncertified nurse unless the certified school nurse is present in the building. Appellant thus contended that the District was in violation of *N.J.S.A.* 18A:40–3.3 with its arrangement at the Tisdale School. It sought an order directing the District to refrain from hiring non-certified nurses to perform nursing duties not in the presence of a certified school nurse and to immediately hire a certified school nurse to work in the Tisdale School daily from 12:15 p.m. to 3:00 p.m.

The matter was referred to the Office of Administrative Law. Agreeing that no material facts were in dispute, the parties cross-moved for summary decision. The Administrative Law Judge (ALJ) found that the District's division of duties between van den Berg and Calabrese did not violate *N.J.S.A.* 18A:40–3.3. She denied appellant's motion for affirmative relief and granted the

District's motion to dismiss the petition. The Commissioner of Education agreed and upheld the ALJ's Initial Decision. Appellant filed an administrative appeal with the State Board, which issued its final decision on September 1, 2004, affirming the Commissioner's determination. This appeal followed.

■ *N.J.S.A.* 18A:40–3.3 does not expressly require the physical presence of a certified school nurse whenever a non-certified nurse provides services. Appellant argues that the legislative intent undergirding the statute supports a construction limiting "the use of uncertified nurses to situations in which they are simultaneously working in a building or complex while the certified nurse is also scheduled to be present, and to temporary substitute situations." According to appellant, the text of the statute and its legislative history require this construction. Appellant further contends that the contrary construction determined by the Board does not require a change from prior practices and thus renders the adoption of *N.J.S.A.* 18A:40–3.2 to –3.6 (the 1999 legislation) a nullity.

■ In construing a statute, we begin by examining its plain language. *Miah v. Ahmed,* 179 *N.J.* 511, 520, 846 *A.*2d 1244 (2004). If the language is clear and unambiguous in its meaning, our duty is to enforce it as written. *Bunk v. Port Auth. of N.Y. & N.J.,* 144 *N.J.* 176, 194, 676 *A.*2d 118 (1996). There is no need, if that is the case, to look beyond the statutory terms to determine statutory intent. *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). But if there is ambiguity in the statutory language that leads to more than one plausible interpretation, the Legislature's intent must be ascertained as a guide to interpretation. *Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001). Our determination of legislative intent includes consideration of not only the particular statute in question, but the entire legislative scheme of which it is a part. *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987). We may turn to extrinsic evidence, including any available legislative history, as well. *Burns v. Belafsky, supra,* 166 *N.J.* at 473, 766 *A.*2d 1095. Our task is to "effectuate

the legislative intent in light of the language used and the objects sought to be achieved." *Ibid.* (citations omitted).

The last sentence of *N.J.S.A.* 18A:40–3.3 allows a school district to "supplement" the services of a certified school nurse with a non-certified nurse provided they are "assigned" to the same school building or complex. The statute does not define "supplement" or "assigned." The interpretation urged by appellant, that "assigned" means at the same time and that "supplement" means assisting in the presence of the certified school nurse, and the contrary interpretation urged by the District are both plausible. Therefore, an ambiguity exists, and we must determine the intent of the Legislature.

We begin by noting that the State Board, after a thorough administrative proceeding, has rendered its interpretation of the statute. The interpretation of a statute by an administrative agency charged with its enforcement is entitled to great weight. *Nelson v. Bd. of Educ.,* 148 *N.J.* 358, 364, 689 *A.2d* 1342 (1997). The State Board is vested generally with administering the school laws, *N.J.S.A.* 18A:4–10 and –15, and specifically with regard to nursing services under the 1999 legislation. *N.J.S.A.* 18A:40–3.6. We recognize the expertise of the agency and the authority delegated to it by the Legislature. The agency's interpretation of a statute within its delegated realm will prevail unless it is plainly unreasonable. *Metromedia, Inc. v. Dir., Div. of Taxation,* 97 *N.J.* 313, 327, 478 *A.2d* 742 (1984). Applying the mentioned canons of statutory construction, and others we will discuss, we are satisfied the State Board's interpretation is a reasonable one.

In the form initially approved by the Legislature, *N.J.S.A.* 18A:40–3.3 did not contain the provision authorizing supplementation of services provided by certified school nurses with non-certified nurses. Governor Whitman conditionally vetoed the legislation as proposed and recommended certain amendments. She stated that while she supported the purpose of the bill to provide enhanced nursing services in schools, "requiring that certified school nurses provide nursing services in all cases is

problematic." Governor's Conditional Veto Message (S–168), May 20, 1999. She continued that "it is essential that a certain degree of flexibility be maintained for school districts when hiring health care professionals to provide nursing services." *Ibid.* In this regard, the Governor recommended retention of current regulations authorizing non-certified nurses to fill in for certified school nurses on a substitute or emergency basis. And she recommended that "a school district have the prerogative to supplement the services provided by the certified school nurse with non-certified personnel provided that the non-certified nurse is assigned to the same school building or school complex as the certified school nurse." *Ibid.* The Legislature added the Governor's recommended language. In its final form, the 1999 legislation authorizes substitute and emergency certificates, *N.J.S.A.* 18A:40–3.5, and the last sentence of *N.J.S.A.* 18A:40–3.3 was added, providing for supplementary services.

This history evidences that the Governor and Legislature struck a balance between the competing goals of providing enhanced nursing services and at the same time allowing local districts flexibility in their personnel and budgetary decisions. When viewed in the context of the overall legislative and regulatory scheme, these competing interests are reasonably accommodated by not requiring the physical presence of a certified school nurse in the building or complex at all times that a non-certified nurse is providing services.

In its school nursing plan, each school district must assure the assignment of certified school nurses to all of its school buildings to provide to all students the services that only certified school nurses are authorized to provide. Depending on its geographic size, enrollment, number and location of school buildings, and other relevant factors, each district can tailor its plan to meet its particularized needs. In this way, each district can provide the required enhanced nursing services to all students, while realizing the benefits of efficiency and economy.

The requirement that supplementary nursing services can be provided by a non-certified nurse only if a certified school nurse is assigned to the same building or complex assures that the services that must be provided by a certified school nurse will be provided by one. We trust that the responsible school officials will assure that the school nursing services plan will allocate sufficient time in the schedule to enable certified school nurses to perform the required services in each school building or complex, guided by the prescribed regulatory criteria, such as grade levels, general education enrollment, special education enrollment, and the like. *See N.J.A.C.* 6A:16–2.1(f)1. The assigned certified school nurse can also establish protocols and procedures to be followed in the school building or complex and provide ongoing oversight in that regard.

The 1999 Legislation created, for the first time, a requirement that uncertified nurses could provide supplementary services only if a school nurse is assigned to the same school building or complex. The State Board, by regulation, has established standards by which local districts shall assign school nurses and determine whether one building or a group of buildings shall constitute a school complex and shall develop an "assignment plan" to achieve the purposes of the 1999 legislation. *See N.J.S.A.* 18A:40–3.6; *N.J.A.C.* 6A:16–2.1(f). We therefore reject appellant's argument that the State Board's interpretation of *N.J.S.A.* 18A:40–3.3 did not change prior practices and renders the statute a nullity.

The interpretation urged by appellant is strained and, in our view, would lead to results the Legislature could not have intended. Appellant points to the first sentence of *N.J.S.A.* 18A:40–3.3, which generally requires that nursing services be provided by certified school nurses "except for those non-nursing personnel who are otherwise authorized by statute or regulation to perform specific health related services." Appellant argues that the exception, by its plain language, applies only to individuals who are not nurses. Thus, for example, according to appellant, a physical

education instructor could conduct a scoliosis screening under the authority expressly granted by *N.J.S.A.* 18A:40–4.3, but a registered nurse who does not hold a school nurse endorsement could not provide the many healthcare services for which he or she is qualified and licensed.

Although appellant's suggested reading of the term "non-nursing personnel" may comport with its literal meaning, we must view this particular term in the context of the remainder of the statute of which it is a part and of the entire legislative scheme. A well-established canon of statutory construction dictates that " 'a statute is to be interpreted in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.' " *Chasin v. Montclair State Univ.,* 159 *N.J.* 418, 427, 732 *A.2d* 457 (1999) (quoting *Zimmerman v, Mun. Clerk of Berkeley,* 201 *N.J.Super.* 363, 368, 493 *A.2d* 62 (App.Div.1985)). "[T]he meaning of words may be indicated and controlled by those with which they are associated." *Germann v. Matriss,* 55 *N.J.* 193, 220, 260 *A.2d* 825 (1970). Where a literal interpretation of individual terms would lead to a result that is inconsistent with the overall statutory purpose, that interpretation should be rejected. *Alan J. Cornblatt. P.A. v. Barow,* 153 *N.J.* 218, 242, 708 *A.2d* 401 (1998). A literal interpretation that leads to an absurd result should be rejected. *Turner v. First Union Nat'l Bank,* 162 *N.J.* 75, 84, 740 *A.2d* 1081 (1999).

In the context of this legislative scheme, as amplified by the statutorily authorized regulatory framework, appellant's proposed interpretation of the exception in the first sentence of *N.J.S.A.* 18A:40–3.3 is not tenable. For the benefit of school children, many school personnel are authorized to render health services, commensurate with their training and as authorized by law or regulation. Many of these individuals possess far less training and competence in the health field than registered nurses. Further, the last sentence of *N.J.S.A.* 18A:40–3.3 expressly authorizes non-certified nurses to provide health services in schools. The

Legislature cannot have intended that, without a certified school nurse present, non-certified school nurses could not provide the very services they are trained and licensed to provide while authorizing the provision of health services by others with less training and skill in the field.

Another argument advanced by appellant would also lead to an absurd result. In the initial phases of the administrative proceedings, appellant argued that *N.J.S.A.* 18A:40–3.3 required the presence of a certified school nurse on a full-time basis in every school building or complex. Part of the relief appellant sought in its initial petition was to order the District to immediately hire a certified school nurse to work in the Tisdale School each day from 12:15 p.m. to 3:00 p.m. By the last phase of the administrative proceedings and on appeal before us, appellant has modified this position. Presumably appellant acknowledges that there is nothing in the statutory scheme that requires the presence of certified school nurses in all schools all the time. Appellant's modified position is that although the statute permits a certified school nurse to provide only part-time coverage in each school building or complex, a non-certified nurse providing supplemental services may do so only during the same hours, when the certified school nurse is present, except in emergency and substitute situations. Thus, appellant concedes that it is permissible for a certified nurse to "ride circuit" throughout the schools in a district. This would limit the non-certified nurse's role to merely "shadowing" the certified nurse.

Under this arrangement, all services provided by nurses to school children would be compressed into limited hours in those situations where a district determined for purposes of efficiency and economy that, based on the size and character of the enrollment in a particular school, full-time coverage by a certified nurse (*i.e.* to provide those services that can only be provided by a certified nurse) was not warranted. During times when the certified nurse is not present, according to appellant, a district could not lawfully provide for coverage by an uncertified nurse.

Thus, for part of each school day two or more nurses might be present, and for the balance of each day no nurse would be present. We think the Legislature would not endorse this anomalous situation but would prefer that school districts be permitted to provide for a registered nurse to be available in case a child became ill or injured.

Finally, we look to a cognate provision of the 1999 legislation to aid in our determination of legislative intent behind *N.J.S.A.* 18A:40–3.3. Adopted at the same time as part of the same bill, *N.J.S.A.* 18A:40–3.4 authorizes districts to utilize personnel "to perform secretarial or clerical duties that assist in providing nursing services only under the supervision of a certified school nurse." We infer that the absence of a similar limitation on noncertified nurses in *N.J.S.A.* 18A:40–3.3 was not an oversight, but was intentional. Had the Legislature intended a physical presence requirement it could easily have stated it.

Affirmed.