982 A.2d 52 (2009)
410 N.J. Super. 357
D.R. HORTON INC., NEW JERSEY, Plaintiff,
v.
JJ. DeLUCA COMPANY, INC., Defendants.
DOCKET NO. A-5501-06T2
Superior Court of New Jersey, Chancery Division, Burlington County.
Decided October 6, 2008.
*53 Michael S. Simon, Trenton, for the plaintiff (Flaster Greenberg, P.C., attorneys).
Frederick J. Gerngross, Philadelphia, PA, for the defendants (Black & Gerngross, P.C., attorneys).
*54 HOGAN, P.J.Ch.
The resolution of this matter requires a discussion of the applicability of N.J.S.A. 2A:23B-10, "Consolidation of separate arbitration proceedings."
The plaintiff, D.R. Horton, Inc., New Jersey ("Horton"), is the owner of a condominium community in Cherry Hill, New Jersey. The plaintiff's office is located in Mount Laurel, New Jersey.
The defendant, J.J. DeLuca, ("DeLuca"), is in the business of general contracting and construction management.

HISTORY
A brief history of this matter is appropriate. DeLuca and Horton are parties to a contract wherein DeLuca would perform construction work for Horton. The contract was entered into June 9, 2005. As a result of a dispute between the parties, Horton terminated the contract with DeLuca on June 20, 2006. DeLuca initiated a claim with the American Arbitration Association ("AAA"), and Horton filed a counterclaim. During the arbitration, the issue arose as to whether to consolidate the proceeding with a separate arbitration proceeding between DeLuca and one of DeLuca's subcontractors on the project. Horton objected to the AAA making that determination and filed the present verified complaint and order to show cause seeking injunctive relief, in principle part enjoining DeLuca from pursuing consolidation under the AAA Rules of Construction, arguing that the New Jersey Arbitration Act, specifically N.J.S.A. 2A:23B-10, required such application for consolidation to be submitted only to the Superior Court.
The contract between the parties provided for arbitration in the event of a dispute, in lieu of a lawsuit. As part of the Horton project, DeLuca had subcontracted a part of its contract work. The record reflects that on May 22, 2007, in Case Management Order No. 3, the AAA arbitrator required that DeLuca file any additional demands for arbitration against its subcontractors and make any required application for consolidation of those demands for arbitration with the AAA by July 9, 2007.
One year later, on May 31, 2008, DeLuca initiated arbitration against three of its subcontractors for contribution and indemnity arising from Horton's counterclaim in the first arbitration.[1] On August 8, 2008, a Rule 7 arbitrator was appointed by the AAA.[2] The Rule 7 arbitrator gave the parties until August 29, 2008, to provide their arguments for or against consolidation of the two arbitrations. On August 28, 2008, the plaintiff filed this action alleging that DeLuca's motion for consolidation before the AAA cannot proceed because DeLuca failed to comply with N.J.S.A. 2A:2310, which provides:
a. Except as otherwise provided in subsection (c.) of this section, upon application of a party to an agreement to arbitrate or to an arbitration proceeding, the Court may order consolidation of separate arbitration proceedings as to all or some of the claims if:

*55 (1) there are separate agreements to arbitrate or separate arbitration proceedings between the same persons or one of them is a party to a separate agreement to arbitrate or a separate arbitration proceeding with a third person;
(2) the claims subject to the agreements to arbitrate arise in substantial part from the same transaction or series of related transactions;
(3) the existence of a commor issue of law or fact creates the possibility of conflicting decisions in the separate arbitration proceedings; and
(4) prejudice resulting from a failure to consolidate is not outweighed by the risk of undue delay or prejudice to the rights of or hardship to parties opposing consolidation.
b. The Court may order consolidation of separate arbitration proceedings as to some claims and allow other claims to be resolved in separate arbitration proceedings.
c. The Court may not order consolidation of the claims of a party to an agreement to arbitrate if the agreement prohibits consolidation.
[(emphasis added).]
The plaintiff seeks a permanent injunction enjoining the defendant from seeking consolidation of its arbitration proceedings between both the plaintiff and defendant and between the defendant and its subcontractors.

CONSOLIDATING ARBITRAL PROCEEDINGS
Essentially, the court is being called upon to determine whether or not it has the exclusive statutory authority to determine whether two arbitrations may or may not be consolidated. As evidenced by N.J.S.A. 2A:23B-10, under certain statutory conditions, the court has such authority, though whether its authority is exclusive has yet to be determined. There are no reported cases that address this query.[3]
Such examination requires a discussion of the statutory setting and its specific language, as well as the circumstances of the parties and the terms of the contract(s) between them. N.J.S.A. 2A:23B-10 finds itself within the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to-32.
N.J.S.A. 2A:23B-6, "Validity of agreement to arbitrate," is also relevant to the discussion as codifying a strong preference for arbitration where the parties are in agreement:
a. An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.
b. The Court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.
c. An arbitrator shall decide whether a condition precedent to arbitrability has *56 been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.
d. If a party to a judicial proceeding challenges the existence of, or claims that a controversy is not subject to, an agreement to arbitrate, the arbitration proceeding may continue pending final resolution of the issue by the Court, unless the Court otherwise orders.
While there is no dispute that arbitration in this case has been provided for contractually, there is a dispute as to the authority of the AAA to consider the issue of consolidation in light of the provisions of the New Jersey Arbitration Act.
The AAA Construction Industry Arbitration Rules provide a mechanism for the AAA to determine consolidation issues as part of arbitrations:
R-7. Consolidation or Joinder
If the parties' agreement or the law provides for consolidation or joinder of related arbitrations, all involved parties will endeavor to agree on a process to effectuate the consolidation or joinder. If they are unable to agree, the Association shall directly appoint a single arbitrator for the limited purpose of deciding whether related arbitrations should be consolidated or joined and, if so, establishing a fair and appropriate process for consolidation or joinder. The AAA may take reasonable administrative action to accomplish the consolidation or joinder as directed by the arbitrator.[4]
The terms of the contracts between the parties are critical to this consideration. The contract between the plaintiff and defendant consists of numerous identified documents incorporated by various references and by exhibit. As set forth above, while there is no dispute as to the use of arbitration under the auspices of AAA, specifically the "Construction Industry Arbitration Rules of the American Arbitration Rules currently in effect," ("AAA Construction Rules") there is a dispute as to the meaning of the deleted provision of the contract related to consolidation or joinder. The deleted provision is as follows:
§ 4.6.4 Limitation on Consolidation or Joinder. No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable *57 law in any Court having jurisdiction thereof. Intentionally Omitted.[5]
The plaintiff argues in its brief that, because of this omission, the clear contractual intent of the parties was therefore to exclude consolidation; otherwise that provision would not have been intentionally deleted. The defendant argues that the underlined words "Intentionally Omitted" are placeholder language and was not intended to bar consolidation. Resolving the meaning of this deletion is integral to the ultimate resolution of the matter before the court.
It has been long provided by our courts that:
"The cardinal rule, in the interpretation of contracts, is to ascertain and give effect to the common intention of the parties, so far as it may be effectuated without infringing legal principles. Where general or indefinite terms are employed in the agreement, the court may look into the attending circumstances and avail itself of such light as they may afford in ascertaining the true meaning of the language so used. Such an inquiry is not for the purpose of changing the writing, but to secure light by which to ascertain its actual significance. The interpretation of the contract given by the parties, as shown by their conduct, such as their acts in partial performance, will be adopted by the Courts."
[Moscowitz v. Middlesex Borough Bldg. & Loan Ass'n, 14 N.J.Super. 515, 523, 82 A.2d 228 (Law Div.1951) (citing Corn Exch Nat'l Bank & Trust Co. v. Taubel, 113 N.J.L. 605, 608-612, 175 A. 55 (E. & A.1934), aff'd 18 N.J.Super. 182, 87 A.2d 33 (App.Div.1952)).]
A clear reading of this integrated contract demonstrates that, when the parties executed the contract, including AIA A201 designated "Exhibit I," which modifies the body of the principal contract document to provide for arbitration and reflects the parties' intention to be governed by the AAA Construction Rules, no fewer than seven paragraphs in the exhibit were devoted to the structural and procedural aspects of an arbitration proceeding should the right of arbitration be invoked. Within these paragraphs is, § 4.6.4, "Limitation on Consolidation or Joinder," which is set forth above. The title of the paragraph reveals its plain meaning. It is a "limitation on consolidation," not a prohibition on consolidation. If it had not been "intentionally omitted" by the parties, it would have provided any number of circumstances in which consolidation could not occur. By eliminating this provision, the parties specifically removed any contractual limitations on consolidation.
As evidenced by the plain meaning of the contract terms and AAA's comprehensive rules of procedure, specifically Rule 7 of their construction rules, it was agreed that the parties would use AAA's procedure for substantively determining whether there should be a consolidation of two or more arbitrations.
Next, this agreement of the parties must be squared with New Jersey's Arbitration Act, N.J.S.A. 2A:23B-1 to -32. The "paramount [judicial] goal when interpreting a statute" is to determine and fulfill the legislative intent. DiProspero v. Penn, 183 N.J. 477, 874 A.2d 1039 (2005). To achieve that goal, we first look to the statutory language and interpret the language in accordance with its plain meaning *58 if it is "`clear and unambiguous on its face and admits of only one interpretation.'" State v. Thomas, 166 N.J. 560, 567, 767 A.2d 459 (2001) (quoting State v. Butler, 89 N.J. 220, 445 A.2d 399 (1982)). If the statute's language "is susceptible to different interpretations, the Court considers extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent." Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 323, 744 A.2d 175 (2000) (quoting Twp. of Pennsauken v. Schad, 160 N.J. 156, 170, 733 A.2d 1159, (1999)). See also Thomsen v. Mercer-Charles, 187 N.J. 197, 206, 901 A.2d 303 (2006); DiProspero, supra, 183 N.J. at 492-93, 874 A.2d 1039; State v. Pena, 178 N.J. 297, 307, 839 A.2d 870 (2004).
The plaintiff's position is that the wording of N.J.S.A. 2A:23B-10 was placed in the statute to trump contracts wherein parties agreed to arbitrate, and where the arbitration authority had in place procedural rules for determining consolidation. In other words, plaintiff's argument is that even where the arbitration authority has in place a recognized procedure for determining if two or more arbitrations should be consolidated and the parties have agreed to those rules, that a separate action must still be filed in the Superior Court to make such a determination. The effect of such an interpretation would render the arbitration rules and the parties' contractual agreement meaningless.
N.J.S.A. 2A:23B-10 is not to be read as an exclusive procedure for determining consolidation of arbitration proceedings where the parties to a contract have agreed to arbitration and the arbitrating authority has implemented procedural rules consistent with fundamental fairness to allow for an arbitrator or arbitrators to make that determination.
A review of the legislative history and intent of the statutory provisions on consolidation demonstrates no basis to believe the consolidation provision was to supplant the agreement of the parties to the contract. The purpose of the act was, in part, to clarify arbitration procedures. As stated in the Assembly Judiciary Committee's report on the legislation and in the statement accompanying the original bill, "[t]he primary purpose of the bill is to advance arbitration as a desirable alternative to litigation and to clarify arbitration procedures in light of the development of the law in this area." (see Assemb. Judiciary Comm. Rep. Statement to S. of N.J. No. 514(1R) (2002)).
In addition, the legislative statement provides, "[t]he Uniform Act is a default act, meaning that many of its provision may be varied or waived by contract." The statement goes on to discuss those provisions that cannot be waived. The consolidation provision is not among those variable or waivable provisions.
As stated in Ramsey Teachers Ass'n v. Board of Educ. of Borough of Ramsey, 382 N.J. Super. 241, 248-49, 888 A.2d 499 (App.Div.2006):
If the language is clear and unambiguous in its meaning, our duty is to enforce it as written. Bunk v. Port Auth. of NY. & N.J., 144 N.J. 176, 194, 676 A.2d 118 (1996). There is no need, if that is the case, to look beyond the statutory terms to determine statutory intent. State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982). But if there is ambiguity in the statutory language that leads to more than one plausible interpretation, the Legislature's intent must be ascertained as a guide to interpretation. Burns v. Belafsky, 166 N.J. 466, 473, 766 A.2d 1095 (2001). Our determination of legislative intent includes consideration of not only the particular statute in *59 question, but the entire legislative scheme of which it is a part. Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129, 527 A.2d 1368 (1987). We may turn to extrinsic evidence, including any available legislative history, as well. Burns v. Belafsky, 166 N.J. at 473, 766 A.2d at 1095. Our task is to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." Ibid. (citations omitted).
In the instant manner, the language of N.J.S.A. 2A:23B-10, while perhaps less clear in its grammatical meaning, is sufficiently clear in its textual meaning. When read in the context with the full Act and the Statement of the legislature as to its intent in the original bill, it is clear the legislative intent was not to interfere with a well-crafted contract that calls for institutional arbitration with an organization that provides a fair mechanism for consolidation.[6] A more plausible interpretation is that N.J.S.A. 2A:23B-10 clarifies that, when asked by a qualifying party to consider consolidation, the courts have the authority to make that determination. This interpretation thus protects parties to contracts where arbitration is undertaken and the person(s) or entity retained to arbitrate, or where the contract itself does not provide a fair procedure to resolve the issue. In those cases, the court has the clear authority to do so.
As pointed out correctly by the defendant in its opposition, Comment 3 to Section 10 of the Revised Uniform Arbitration Act (RUAA) from which the New Jersey statute was taken, the National Conference of Commissioners on Uniform State Laws suggests that the uniform consolidation language was not intended to prohibit such a decision within arbitration proceedings. Their comment bears inclusion here:
A provision in the RUAA specifically empowering Courts to order consolidation in the appropriate cases makes sense for several reasons. As in the judicial forum, consolidation effectuates efficiency in conflict resolution and avoidance of conflicting results. By agreeing to include an arbitration clause, parties have indicated that they wish their disputes to be resolved in such a manner. In many cases, moreover, a Court may be the only practical forum with which to effect consolidation.

[Unif. Arbitration Act, comment 3 on § 10, 7 U.L.A. 40 (emphasis added).]
It is this comment, and in particular the last sentence of the comment, that provides support to the interpretation adopted by this court. That is to say that parties who agree to arbitration and who agree to the full range of procedural authority found within the rules of the arbitration institution are bound to comply with such rules. This effectuates efficiencies and avoids conflicting results. Where there is no procedural mechanism agreed to that provides for consolidation, a court would exercise its statutory authority under N.J.S.A. 2A:23B-10.
This procedural deference to the arbitration authority has long been the law in this state. Kalman Floor Co. v. Jos. L. Muscarelle, Inc., 196 N.J.Super. 16, 16-17, 481 A.2d 553, (App.Div.1984), aff'd 98 N.J. 266, 486 A.2d 334 (1985). While the plaintiff correctly points out that this line of cases were generally decided before the adoption of N.J.S.A. 2A:23B-10, which became effective January 1, 2003, there is nothing in the statute or any subsequent *60 case law involving arbitration to suggest that such deference is misplaced.

INJUNCTIVE RELIEF
In conclusion, the plaintiff having proceeded by verified complaint and order to show cause for preliminary and final injunctive relief, and there being no material issues of fact, as the relief sought is dependant on the outcome of the statutory interpretation, the court finds that the plaintiff is not entitled to such injunctive relief. A review of the factors for such relief bears that out. Crowe v. De Gioia, 90 N.J. 126, 447 A.2d 173 (1982).
The plaintiff has not demonstrated that it is threatened with substantial, immediate and irreparable harm. Its best argument is that if the court does not decide the issue of consolidation, then the AAA will. It is unclear why this fate would cause irreparable harm, as the AAA has been managing this case for well over a year and is most familiar with the factual issues, and allegations. In order to consolidate, a court must first determine that considerable delay, and potentially inefficient litigation would most likely occur, essentially creating parallel proceedings. Construction disputes are often complex and, in this case, the AAA is already familiar with those complexities.
For the reasons heretofore set forth in this decision, the plaintiff likewise has not demonstrated that there is a reasonable probability of eventual success on the merits, i.e. whether the defendant should be enjoined from seeking further consideration by the AAA of the consolidation issues.[7]
In balancing the equities, the plaintiff has not explained how the equities balance in its favor. The plaintiff agreed to arbitration, specifically agreed to AAA as the arbitral institution, and specifically agreed to conduct the proceedings according to AAA's construction rules, which provide a mechanism for determining consolidation issues. Plaintiff has not successfully argued that the AAA procedures are unfair, inequitable, or procedurally or substantively contrary to law; neither has the plaintiff set forth how having AAA consider this issue would be inequitable. The equities clearly favor the defendant.
Finally, the court has considered the public interest. The support of alternative dispute resolution in general and arbitration in particular have been long-standing policies adopted by the legislature in its statutory efforts and by the courts in the decision-making process as being reputable and often expeditious methods of resolving disputes in the public interest, outside of the judicial setting.
Having failed to meet the requirement for preliminary and final injunctive relief and for the reasons set forth, the relief sought by the plaintiff is denied. The verified complaint is dismissed with prejudice.
NOTES
[1] The record supplied to the Court shows considerable maneuvering of the parties in this case regarding the filing of an arbitration demand by DeLuca against its subcontractors, which appears to account for the delay in adherence to the AAA case management orders. The May 31, 2008 demand for arbitration against the subcontractors was ultimately the direct result of Case Management Order No. 8, which directed the filing of the demand and DeLuca to request a Rule 7 arbitrator to consider the question of consolidating the separate arbitrations.
[2] Rule 7 is the AAA Construction Rule which provides the procedure for consolidating, set forth infra.
[3] Subsequent to this decision, the Appellate Division considered the consolidation statute and affirmed the trial court in its decision not to order consolidation. While the underlying issues did not deal with the specific issue in this case, it did discuss the interpretation of the consolidation provision. The Appellate Division held in part: "... we would conclude that such consolidation was inappropriate because it would substantially alter the terms of the settlement agreement McManus entered into with Biber, which provided for arbitration before a single specifically named arbitrator". Biber Partnership, P.C. v. Diamond Hill Joint Venture, LLC, 404 N.J.Super. 96, 103, 960 A.2d 774 (App.Div.2008). This was not the factual circumstance in this matter.
[4] For R-7 Effective October 1, 2009, the text of this rule was modified by AAA. However, the substance of the rule as it relates to this case was not altered.
[5] In the printed contract the entire wording of the paragraph is lined out in addition to the words "Intentionally Omitted."
[6] Neither party has challenged the AAA rules on consolidation or joinder, or the implementation of the rules on the basis that they are not fundamentally fair to either party. However a reading of Rule 7 clearly demonstrates that the procedural process is fair and affords both parties an opportunity to be heard by an independent finder of fact.
[7] Such an injunctive order would put the parties immediately at odds with the case management orders of the AAA, who is not a party to this proceeding, and thus, over which this court has no jurisdiction.