FRANCES ROSENBERG, PLAINTIFF-RESPONDENT, v. TOWN OF NORTH BERGEN, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT, PUBLIC SERVICE COORDINATED TRANSPORT, DEFENDANT, NEW JERSEY ASPHALT AND PAVING COMPANY AND LETTIERI AND BELLEZZA COMPANY, DEFENDANTS-APPELLANTS.

Argued May 8, 1972—Decided July 19, 1972.

*Mr. John Gero* argued the cause for defendants-appellants.

*Mr. Seymour Margulies* argued the cause for plaintiff-respondent (*Mr. Herbert L. Zeik,* attorney; *Mr. Margulies,* of counsel, and on the brief).

*Mr. Joseph V. Cullum* filed a statement in lieu of brief on behalf of defendant-respondent.

The opinion of the Court was delivered by

MOUNTAIN, J. Plaintiff, Frances Rosenberg, sued for personal injuries which she sustained as the result of a fall on Bergenline Avenue in North Bergen on June 6, 1968. At the time of the accident she was crossing the street from west to east in order to reach a Public Service bus stop. The roadbed of this highway had been repaved about 1935 to provide, on either side of a center line, three contiguous lanes of concrete. Some time before the accident the two easternmost lanes had parted, leaving a fissure between them. The plaintiff caught her heel in this opening and fell. In her action she joined as defendants New Jersey Asphalt & Paving Company (Asphalt Co.), which had done the paving work, its successor in interest, Lettieri and Bellezza Company (Lettieri Co.), the Township of North Bergen and Public Service Coordinated Transport.

The defendant municipality and Public Service each moved for summary judgment. The municipality's motion was denied and that of Public Service was granted. Neither of these rulings has been brought before us on this appeal.

At the same time motions for summary judgment were also brought by Asphalt Co. and Lettieri Co. on the ground that any claim of this plaintiff against either of these corporations was barred by N. J. S. A. 2A:14–1.1.[1] Both of

---

[1]This statute reads as follows:

No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and con-

these motions were granted whereupon plaintiff sought leave to appeal to the Appellate Division. The application having been granted, that court reversed the action of the trial judge and remanded the cause for a disposition on the merits, 115 *N. J. Super.* 322 (App. Div. 1971). We granted the joint petition of Asphalt Co. and Lettieri Co. for certification. 59 *N. J.* 364 (1971).

In its opinion reversing the trial court, the Appellate Division, as a matter of statutory construction, determined that a road or highway is not "an improvement to real property" within the meaning of the statute. 115 *N. J. Super., supra,* at 325. It was therefore unnecessary for that court to reach the issue as to whether or not the statute is unconstitutional, as urged by the plaintiff. *Id.* at 326.

This statute, *N. J. S. A.* 2A :14–1.1, took effect May 18, 1967. The available materials touching its legislative history are meager and unrevealing. We are aware, however, that between 1964 and 1969 some thirty states adopted identical or similar statutes. Comment: *Limitation of Action Statutes for Architects and Builders—Blueprint for Nonaction.* 18 *Catholic U. L. Rev.* 361 (1969). Other states have since done likewise.

It appears probable that two rather recent but unrelated developments in the law may well have provided the motivation for this widespread legislation. The common result of the developments to which we refer has been to enlarge very appreciably the area of potential liability to which architects and building contractors, among others, may be liable. We think it likely that these statutes are a legislative response seeking to delimit this greatly increased exposure. In order to afford background against which to discern more clearly what may have been the legislative intent in passing

---

trol as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought. [*N. J. S. A.* 2A :14–1.1]

this act, we take brief note of these two changes in the law as they have come about here in New Jersey.

The first of these developments has taken place in the field of limitation of actions and is commonly referred to as the "discovery" rule. In New Jersey the first case of this kind was *Fernandi v. Strully*, 35 *N. J.* 434 (1961). Here a wing nut had been negligently allowed to remain in the plaintiff's abdomen following an operation. Upon its discovery she instituted suit. Our two-year statute of limitations would have barred the plaintiff's right to recover if the cause of action were held to have accrued at the time of the operation, but not if the right to sue were found not to have arisen until plaintiff discovered what had occurred. This court adopted the latter view as being more just and equitable. In a comprehensive opinion, containing a wide review of the authorities, Justice Jacobs analyzed the conflicting policy arguments and held, for the court, that at least in foreign body malpractice cases the statute of limitations should not be held to commence to run until the victim discovers, or should have discovered, the wrong that has been inflicted.

In *Rosenau v. City of New Brunswick and Gamon Meter Co.*, 51 *N. J.* 130 (1968), plaintiffs suffered property damage when a water meter in their home broke. The meter had been purchased from Worthington Gamon Water Company by the City of New Brunswick in 1942 and installed in plaintiffs' home in 1950. The meter ruptured, causing damage, in 1964. The Law Division granted Worthington's motion for summary judgment on the ground that plaintiffs' claim was barred by the applicable six-year statute of limitations. *N. J. S. A.* 2A:14–1. The Appellate Division reversed insofar as plaintiffs' claim was based upon negligence but affirmed insofar as it rested on the theory of strict liability in tort. This court held that neither claim was statute-barred since upon either theory—negligence or strict liability—the cause of action did not accrue until injury resulted. This took place when the meter broke. The case,

therefore, does not rest upon the "discovery" rule, since the cause of action itself did not arise until the moment of injury. By way of *dicta*, however, the court made reference to the rule that had been announced in *Fernandi, supra,* as a "highly equitable 'discovery' principle" which was "receiving ever increasing support throughout the country," but declined to "inquire whether it should be extended so as to apply universally," since this issue was not presented for decision. *Rosenau v. City of New Brunswick, supra,* 51 *N. J.* at 139.

In two cases decided later the same year, however, this court did clearly accept the "discovery" rule as having, if not universal, at least very wide application. In *New Market Poultry Farms, Inc. v. Fellows,* 51 *N. J.* 419 (1968), plaintiff sought damages for a loss sustained because of an inaccurate acreage calculation made by defendant, a professional engineer and land surveyor. We found that damage resulted at the time the inaccurate calculation was given the plaintiff's assignor, but that discovery of the error did not take place until eleven years later when the property was sold. The action of the trial court in granting defendant's motion for summary judgment was reversed upon the ground that the statute of limitations did not commence to run until the discovery of the error.

*Diamond v. N. J. Bell Telephone Co.,* 51 *N. J.* 594 (1968), presented a case in which plaintiffs claimed that defendant, in the course of installing an underground conduit in 1957, had damaged their sewer line. The damage was not apparent until 1966 when a backup occurred and plaintiffs' property was flooded. Justice Schettino, speaking for the court, reviewed our earlier cases as well as many in other jurisdictions, and reached the conclusion that where damage was hidden and could not readily be detected, justice required that the statute of limitations would not be deemed to run until the wrong was discovered or should have been detected. See also *Yerzy v. Levine,* 57 *N. J.* 234 (1970),

affirming 108 *N. J. Super.* 222 (App. Div. 1970), and *Federal Insurance Co. v. Hausler,* 108 *N. J. Super.* 421 (App. Div. 1970).

This rule which decrees that in appropriate cases a statute of limitations shall not be deemed to run until a wrong has been discovered or should have been discovered, fosters the just result of protecting those who have suffered injury from losing a right to redress because of ignorance of the wrong done. In achieving this salutary result the rule does, however, necessarily prolong the potential exposure of wrong-doers and of those who may be thought to be wrongdoers. In the case before us, for instance, the contractors who re-paved Bergenline Avenue are being required to defend an action for damages more than thirty years after their work was completed.

The second development in the law which we think may have provoked this legislation is the recently adopted rule that an architect's or a contractor's liability for negligent planning or construction will not terminate, as a matter of law, upon the work having been completed and accepted by the owner or employer. In *Totten v. Gruzen,* 52 *N. J.* 202 (1968) this Court so held, rejecting the earlier "completed and accepted" rule as set forth in *Miller v. Davis & Averill, Inc.,* 137 N. J. L. 671 (E. & A. 1948).[2] In the course of his opinion in *Totten* Justice Hall observed,

---

[2] We do not think the fact that *N. J. S. A.* 2A:14–1.1 was enacted in 1967, while *Totten v. Gruzen* was not decided until 1968 detracts materially from the foregoing argument. The trend against the "completed and accepted" rule was already clearly established well before our Legislature acted. See Annotation, "Negligence of building or construction contractor as ground of liability upon his part for injury or damage to third person occurring after completion and acceptance of the work." 58 *A. L. R.* 2d 865 (1958), as well as cases from other jurisdictions collected in *Totten v. Gruzen, supra,* 52 *N. J.* at 209.

They [builders and contractors] are not to be relieved from liability merely because their work has been completed and accepted by the owner. Such liability may rest on architects and engineers on the basis of improper design as well as on contractors for defective materials, equipment and workmanship. [*Totten v. Gruzen, supra*, 52 *N. J.* at 210]

Thus the immunity afforded by the earlier rule vanished. The moment of completion and acceptance was no longer also the moment when potential liability to third parties terminated.

While we are firmly of the opinion that each of these new rules marks an enlightened advance in the field of tort liability, it is nevertheless apparent that their adoption has resulted in an increased exposure on the part of architects, contractors and the like. We think that in enacting *N. J. S. A.* 2A:14–1.1 the Legislature sought to provide what it deemed to be a reasonable measure of protection against this greater hazard.

■■ Viewed in this context the statute should be given a broader sweep than was accorded to it by the Appellate Division. If the condition to which the Legislature addressed itself was this extension of potential liability, then there seems no reason not to include within the favor of the statute all to whom this condition may adhere whether they be planners and builders of structures, roads, playing fields or aught else that by broad definition can be deemed "an improvement to real property." We prefer to read the statute, consonant with what we thus judge to have been the legislative intent, as applying to all who can, by a sensible reading of the words of the act, be brought within its ambit. We therefore conclude that the statute does apply to the facts of this case.

We come then to a consideration of the constitutionality of this enactment. In three other jurisdictions similar acts have been subjected to constitutional challenge. In Illinois the statute was found to be unconstitutional; in Arkansas and Oregon the enactments were sustained. *Skinner v.*

*Anderson,* 38 *Ill.* 2d 455, 231 *N. E.* 2d 588 (1967); *Carter v. Hartenstein,* 248 *Ark.* 1172, 455 *S. W.* 2d 918 (1970), appeal dismissed, 401 *U. S.* 901, 91 *S. Ct.* 868, 27 *L. Ed.* 2d 800 (1971); *Josephs v. Burns,* 491 *P.* 2d 203 (Or. 1971).

It seems important, first, to examine the nature of this law. In an important respect it is unlike the typical statute of limitations. Commonly such a statute fixes a time within which an injured person must institute an action seeking redress, and generally this time span is measured from the moment the cause of action accrues. Here such is not the case. The time within which suit may be brought under this statute is entirely unrelated to the accrual of any cause of action.

 Where a claim for redress is based upon negligent injury to person or property, the cause of action accrues when there has been a negligent act with proximately resulting injury or damage. The careless act itself is not enough to give rise to a cause of action; there must also be consequential injury or damage. *Rosenau v. City of New Brunswick, supra,* 51 *N. J.* at 137–139. Thus plaintiff's alleged cause of action did not arise until she fell and sustained injury. Of course this was many years after the ten-year period fixed by the statute had expired. She claims that the statute, in its application to her, amounts to a deprivation of due process, since, as she expresses it, the statute bars her cause of action before it has arisen. This formulation suggests a misconception of the effect of the statute. It does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has *no* cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or

abolish old ones as long as no vested right is disturbed. *Sexton v. Newark Dist. Telegraph Co.*, 84 *N. J. L.* 85, 92–93 (Sup. Ct. 1913), aff'd 86 *N. J. L.* 701 (E. & A. 1914); *Young v. Sterling Leather Works*, 91 *N. J. L.* 289 (E. & A. 1917); *Danek v. Hommer*, 9 *N. J.* 56 (1952); *Harlow v. Ryland*, 78 *F. Supp.* 488, 492 ( E. D. Ark. 1948), aff'd 172 *F.* 2d 784 (8th Cir. 1949).[3]

■ The classification of persons entitled to the benefits of the statute is challenged as being in violation of *Article* IV, § VII, par. 9(8) of our Constitution, which forbids the Legislature to enact any private, special or local law granting to any corporation, association or individual any exclusive privilege, immunity or franchise. It is likewise said that this classification violates the equal protection clause of the Federal Constitution.

---

[3]In simply fixing an arbitrary period of potential liability, at the expiration of which time there may be no recovery regardless of fault, this statute is not unique. A similar type of statute, for instance, has been employed since the early days of this State to limit the liability of sureties on many different sorts of bonds. Thus no action may be brought against a surety on a fiduciary's bond more than twenty years after the date of the bond, *N. J. S. A.* 2A:14–16; nor against a surety on the bond of a sheriff, county treasurer or municipal collector or treasurer more than nine years after the date of the bond. *N. J. S. A.* 2A:14–17. Immunity is accorded the surety by the mere passage of time. Potential liability is then at an end whether or not a cause of action exists or, but for the statute, might thereafter arise. Our former court of last resort upheld such a statute in an action brought against a surety on the bond of a municipal official. *Waterford v. Maryland Casualty Co.*, 119 *N. J. Eq.* 92 (E. & A. 1935). See also *Knowlton v. Read*, 11 *N. J. L.* 320 (Sup. Ct. 1830) ; *Totowa v. American Surety Co. of N. Y.*, 39 N. J. 332, 335–336 (1963). Statutes of this kind, in aid of sureties, have been enacted at least as recently as 1914. *L.* 1914, *c.* 171, (now *N. J. S. A.* 45:18–2), requires suits against sureties on bonds of collection agencies to be brought within two years of the expiration of the bond. Such acts were on our statute books at least as long ago as 1799. The *State v. Sureties of Hardenburgh*, 2 *N. J. L.* 334, 339 (Sup. Ct. 1808). During the whole of this time, as far as can now be told, no one has challenged this legislation as depriving a claimant of due process or as improperly favoring one class of obligors.

As we have already indicated the class of persons for whose benefit this law was enacted has become subject to an extension of potential liability. That such persons should seek and that the Legislature should grant some measure of relief seems understandable. All statutes limiting in any way the time within which a judicial remedy may be sought are statutes of repose. The chief consideration underlying such legislation is said to be fairness to a defendant.

There comes a time when he [the defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim when "evidence has been lost, memories have faded, and witnesses have disappeared." [*Developments in the Law*: *Statutes of Limitations* 63 *Harv. L. Rev.* 1177, 1185 (1950)]

The statute we are considering is an appropriate means to this end unless, as is argued, the classification can be faulted.

For convenience we have referred to the beneficiaries of this legislation as architects and building contractors. But the favored class is much larger. It includes "any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property." We do not attempt at this time to enumerate all of the classes of persons coming within this statutory group. These might include, as examples only, the designer of a sewage plant for a development complex, a landscape gardener or a well driller. We can find here no such exclusion from the class as to justify a determination that this is a special law coming within the prohibition of our state Constitution. *Roe v. Kervick,* 42 *N. J.* 191, 233 (1964); *Harvey v. Essex County Board of Freeholders,* 30 *N. J.* 381, 389 (1959).

For substantially the same reason we see no violation of equal protection. The classification bears a reasonable relationship to the purposes which we believe are sought to be served by the legislation. *David v. Vesta Co.,* 45 *N. J.* 301, 314–317 (1965); *N. J. Restaurant Ass'n v. Holderman,* 24 *N. J.* 295, 300–305 (1957); *State v. Smith,* 58 *N. J.* 202, 206–207 (1971).

For all of the reasons set forth above we conclude that the statute is constitutional and that it properly applies to the facts of this case. Accordingly the judgment of the Appellate Division is reversed and the summary judgments in favor of appellants are reinstated.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.