924 A.2d 1193

JOHN DAIDONE AND LAURA DAIDONE, HIS WIFE, PLAIN-
TIFFS–APPELLANTS, v. BUTERICK BULKHEADING, SCOTT
LEPLEY, LEPLEY DESIGN GROUP AND LEPLEY–MCCORRY
ARCHITECTS AIA, P.C., DEFENDANTS–RESPONDENTS, AND
JOHN DOE, A FICTITIOUS NAME REPRESENTING A LI-
CENSED PROFESSIONAL ENGINEER RESPONSIBLE FOR
REVIEWING AND CERTIFYING CONSTRUCTION AND CER-
TAIN RECORDS, DEFENDANT.

Argued March 5, 2007—Decided June 26, 2007.

*Richard J. Allen, Jr.,* argued the cause for appellants (*Kipp & Allen, L.L.P.,* attorneys).

*Richard J. Shackleton,* argued the cause for respondent Buterick Bulkheading (*Shackleton & Hazeltine,* attorneys).

*Daniel J. Cogan,* argued the cause for respondents Scott Lepley, Lepley Design Group, and Lepley–McCorry Architects AIA, P.C. (*Hoagland, Longo, Moran, Dunst & Doukas, L.L.P.,* attorneys; *Mr. Cogan* and *Richard W. Gaeckle,* on the brief).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal addresses a discrete issue: whether, under the circumstances present in this matter, the Statute of Repose, *N.J.S.A.* 2A:14–1.1, should not commence until the issuance of a certificate of occupancy notwithstanding the completion of work by subcontractors at an earlier date. In this case, plaintiffs John and Laura Daidone acted as their own general contractor and sub-

contracted with several contractors to perform specific portions of the work in respect of the design and construction of their home. Among those, defendants Scott Lepley, Lepley Design Group, and Lepley–McCorry Architects AIA, P.C. (collectively, Lepley) designed plaintiffs' home, and defendant Buterick Bulkheading, Inc. installed the pilings for the home's foundation. More than ten years after both Lepley and Buterick completed their respective portions of the work, but less than ten years after a certificate of occupancy was issued for plaintiffs' home, plaintiffs sued Lepley and Buterick alleging negligence and other claims. Plaintiffs claim that the relevant start date for Statute of Repose purposes must be the date on which the certificate of occupancy issues; Lepley and Buterick assert that the start date must be when they completed their work.

The plain language of *N.J.S.A.* 2A:14–1.1(a) is clear: no action for deficient design or construction of an improvement to real property may be brought "more than 10 years *after the performance or furnishing of such services and construction.*" (Emphasis supplied). If the design or construction services provided continue up to and including the date the certificate of occupancy is issued for the improvements made, then the start date for Statute of Repose purposes is the date of the certificate of occupancy. However, if the design or construction services are completed before a certificate of occupancy is issued and the designer or contractor has no further functions to perform in respect of that construction project, then the start date for Statute of Repose purposes is the date on which the designer or contractor has completed his or her portion of the work.

I.

Commencing sometime prior to February 1993, plaintiffs took steps to build their home in Forked River, Lacey Township. Although plaintiffs acted as their own general contractor,[1] plain-

---

[1] Plaintiffs dispute the trial court's description of them as the "general contractor" on this construction project. Plaintiff John Daidone, however, testified in

tiffs hired Lepley to provide the architectural design for that home, which design included a piling system to support the structure. Lepley prepared and, on February 19, 1993, certified those plans. The Lacey Township Construction Official approved those plans on June 23, 1993. Once the plans were approved, Lepley's retention as an architect was completed, and Lepley had no continuing role or responsibilities in respect of the design or construction of plaintiffs' home. Significantly, plaintiffs did not retain Lepley to perform any construction supervisory services or the like.

After the plans were completed by Lepley and approved by Lacey Township, plaintiffs contracted with Buterick to install the foundation pilings as designed by Lepley. Buterick did so, had the completion of its work in accordance with the plans certified by a professional engineer, and invoiced plaintiffs for all work Buterick performed. On May 24, 1994, plaintiffs paid Buterick's bill in full with a check issued on the account of "DRN Contracting." Once its piling services were completed, Buterick performed no further work on plaintiffs' home. A certificate of occupancy for

---

his deposition that he "was doing the work. [He] was the principal contractor." Further, in response to the question whether he "acted as a general contractor on this project[,]" plaintiff John Daidone responded, "[t]hat's correct."

The trial court found that "[t]he facts show that plaintiff was the contractor for his own house." The trial court rejected plaintiffs' claim that plaintiff John Daidone is "only a computer expert, not a builder[,]" finding that plaintiff John Daidone "built this house. He took out the construction permit and he apparently had a construction company … and his wife [plaintiff Laura Daidone] is the one that paid Buterick on that building company['s] check." Although, in this summary judgment context, "we view the facts in the light most favorable to [ ] plaintiff[s,]" *Soto v. Scaringelli*, 189 *N.J.* 558, 564, 917 *A.*2d 734 (2007), we see no reason to disturb those findings. *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974) (holding that " 'we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' " (quoting *Fagliarone v. Twp. of N. Bergen*, 78 *N.J.Super.* 154, 155, 188 *A.*2d 43 (App.Div.), *certif. denied*, 40 *N.J.* 221, 191 *A.*2d 61 (1963))).

the home was issued on June 14, 1994 and, thereafter, plaintiffs occupied it.

Starting in 1999, five years after plaintiffs had moved into their home, plaintiffs experienced a number of problems resulting from the home settling on its foundations. According to plaintiffs, their "home settled as a result of the improper installation of the pilings supporting that home and the improper design of the ground level slab[.]" In his deposition, plaintiff John Daidone described the "settling" as follows:

Something was not either designed right or installed right. Slabs should not settle as they settled.

Q. What do you mean slabs should not settle as they settled?

A. .... Because the utilities, the boiler and the hot water heater are on a platform that sits on the slab. .... But what's happening, as the slab was settling all the pipes and everything else are ripping out of the ceiling. The natural gas pipe coming in from the meter was being stressed. You could still see the marks in the ceiling. .... We had to shim up basically the platform two inches to relieve that stress, all right.

The sewerage waste pipe which goes through the floor out, that was ripping through. That was just coming down too because of the settlement. So we had to cut that and put a rubber gasket. The rubber gasket is still there. We had to do that in two places. The electrical panel had to be lifted up because it was being stressed.

Q. .... You said if you didn't take these precautions that you could not live in the house. The house would have been uninhabitable?

A. Yeah, 'cause the furnace wouldn't have worked, the boiler, the hot water, everything was ripping out of the ceilings, the pipe, the heating. It's all hot water baseboard. They were all ripping out of the ceiling and bending.

Q. You said natural gas was pulling too?

A. The natural gas pipe. You could see it till today. When it was put in it was horizontal. Now it's pitched down because it was being dragged down.

Although plaintiffs noticed these changes as early as 1999, they did not seek any expert assistance until late 2001, when they retained an expert to perform a subsurface investigation and geotechnical evaluation of their home. In a report dated January 2, 2002, the expert opined that "the basement structure has settled due to the underlying soft soils and organics present." Significantly, after describing the length of the pilings installed, plaintiffs' expert did not conclude that the design or installation of the

pilings was deficient. The most the expert would say is that "[t]he length of these timber pilings below the ground surface *may not be enough* based on the information available from the soil borings." (Emphasis supplied).

Based on their expert's advice, plaintiffs undertook repairs to their home, which repairs cost approximately $90,000 and were completed by July 2002. Plaintiffs, however, did not file their complaint against either Lepley or Buterick until June 2, 2004. Although that date was within ten years after plaintiffs secured a certificate of occupancy for their home, it was more than ten years after both Lepley and Buterick had performed and completed their services.

Lepley and Buterick moved to dismiss plaintiffs' complaint as barred by the Statute of Repose, which the trial court granted. After noting that plaintiffs acted as the general contractor for their home, the trial court found that

> plaintiff[s] also slumbered on [their] rights. [They] had an engineering report that was dated 1/2/02 showing the footing defects, but [they] never brought a suit until 6/24/04. I think for purposes of this case the bulkheader [Buterick] was substantially complete when he did his work as a sub[-contractor], got out, and was paid. It was done, and I think the designer [Lepley] similarly completed his work when this plan was approved by the Construction Official. So that's my interpretation of substantial completion for purposes of this case.

The trial court concluded that "the bulkheader [and the] designers are entitled to the protection of the Statute of Repose" and "that the claimed defects constitute defective and unsafe conditions covered by the Statute." It underscored that "[t]here was no diligence in bringing the suit and the Complaint was outside of the ten-year Statute[.]"

Plaintiffs appealed, and the Appellate Division affirmed the judgment of the trial court. In an unpublished opinion, the panel explained that "[t]he purpose of the statute [of repose] is to protect architects and contractors from never-ending liability for their work on construction projects." Concluding that "the Statute of Repose is an affirmative defense, imposing the burden of proving it on defendants[,]" the Appellate Division held that "the

ten-year Statute of Repose commences 'when the architect or contractor completes its task with respect to the property involved in the claim'" (quoting *Hopkins v. Fox & Lazo Realtors,* 242 *N.J.Super.* 320, 328, 576 *A.*2d 921 (App.Div.1990)). Referring to language we too have cited with approval, the panel quoted Hopkins for the proposition that "'when an architect ... completes the work for which he was commissioned, he should be able to look back ten years and one day after the completed performance of his work and know there is repose from liability'" (Quoting *id.* at 327, 576 *A.*2d 921; *see Newark Beth Israel Med. Ctr. v. Gruzen & Partners,* 124 *N.J.* 357, 366, 590 *A.*2d 1171 (1991) (same)). Affirming the trial court's entry of judgment in favor of Lepley and Buterick, the Appellate Division concluded as follows:

> We see no reason for extending the commencement date for the Statute of Repose to the issuance of the certificate of occupancy under the circumstances here, where the architect and the bulkheader completed their work more than a year before the certificate of occupancy was issued and plaintiffs failed to file a timely complaint when they had notice of their injury five years after the certificate of occupancy was issued.

We granted plaintiffs' petition for certification, *Daidone v. Buterick Bulkheading,* 188 *N.J.* 572, 911 *A.*2d 65 (2006), and now affirm the judgment of the Appellate Division.

## II.

The Statute of Repose provides, in relevant part, that

> [n]o action ... to recover damages for any deficiency in the design, ... or construction of an improvement to real property, ... shall be brought against any person performing or furnishing the design, ... or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.
>
> [*N.J.S.A.* 2A:14–1.1(a).]

We have explained that "[i]n an important respect, [a statute of repose] is unlike the typical statute of limitations [because t]he time within which suit may be brought under [the statute of repose] is entirely unrelated to the accrual of any cause of action." *Rosenberg v. Town of N. Bergen,* 61 *N.J.* 190, 199, 293 *A.*2d 662 (1972). Unlike a statute of limitations, the Statute of Repose

"does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action[ ] from ever arising." *Ibid.* For that reason, "injury occurring more than ten years after the negligent act allegedly responsible for the harm[ ] forms no basis for recovery." *Ibid.* The starkness of its application is intended:

> The injured party literally has *no* cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress. The function of the statute [of repose] is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed.
>
> [*Id.* at 199–200, 293 A.2d 662.]

*See Greczyn v. Colgate–Palmolive,* 183 *N.J.* 5, 14, 869 *A.*2d 866 (2005) (explaining that "statute of repose, by its very terms—'no action ... shall be *brought* ... more than ten years after ... construction'—bars [ ] claims [older than ten years]").

With those principles as our guide, we address the certified issue in this appeal, that is, whether the start of the time period under the Statute of Repose should be delayed until the issuance of a certificate of occupancy even though the designer or contractor completed his or her work at an earlier date.

A.

When interpreting a statute, our overarching duty is " 'to construe and apply the statute as enacted.' " *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005) (quoting *In re Closing of Jamesburg High Sch.,* 83 *N.J.* 540, 548, 416 *A.*2d 896 (1980)). We do so by applying the following principles. First, "[a] court should not 'resort to extrinsic interpretative aids' when 'the statutory language is clear and unambiguous, and susceptible to only one interpretation.' " *Ibid.* (quoting *Lozano v. Frank DeLuca Const.,* 178 *N.J.* 513, 522, 842 *A.*2d 156 (2004) (internal quotation marks and editing marks omitted)). That said, "if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construc-

tion.' " *Id.* at 492–93, 874 *A.*2d 1039 (quoting *Cherry Hill Manor Assocs. v. Faugno,* 182 *N.J.* 64, 75, 861 *A.*2d 123 (2004) (internal quotation marks omitted)). We have explained that "[w]e may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language." *Id.* at 493, 874 *A.*2d 1039. We are guided by first principles: "[o]ur analysis ... begins with the plain language of the statute." *Ibid.* (citing *Miah v. Ahmed,* 179 *N.J.* 511, 520, 846 *A.*2d 1244 (2004)).

■ The Statute of Repose provides that no action for construction defects shall be brought against a designer or contractor more than ten years "after the performance or furnishing of such services and construction." *N.J.S.A.* 2A:14–1.1(a). The Legislature's words are clear and therefore deserving of enforcement as written: a cause of action for construction or design defects ceases to exist ten years and one day after the designer or contractor has performed or furnished his or her design or construction services. Thus, if a designer's or contractor's services continue up to and including the date the certificate of occupancy is issued for the improvements made, then the start date for Statute of Repose purposes is the date of the certificate of occupancy. If, however, the design or construction services are completed before a certificate of occupancy is issued and the designer or contractor has no further functions to perform in respect of that construction project, then the start date for Statute of Repose purposes is the date on which the designer or contractor has completed his or her portion of the work.

■ We apply that paradigm to this case. Because it is undisputed that both Lepley and Buterick completed their respective portions of the work more than ten years before plaintiffs filed their complaint, the passage of time under the Statute of Repose leads to but one conclusion: as a matter of law, plaintiffs' causes of action against Lepley and Buterick relating to design and construction defects are deemed never to have arisen.

## B.

Plaintiffs nevertheless assert that the proper start date for Statute of Repose computation purposes should be the date on which the certificate of occupancy issues and that, under that framework, their claims are timely. They claim that New Jersey's strong public policy favoring the protection of homeowners and consumers—as evidenced in the Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –166, the Construction Lien Law, *N.J.S.A.* 2A:44A–1 to – 38, and other legislative pronouncements—counsels the rejection of individualized determinations in respect of when a designer or contractor has completed performance. They urge, instead, the adoption of a uniform, indisputable date from which the Statute of Repose is to run as to all aspects of a construction project. Plaintiffs suggest that that uniform date should be the issuance of a certificate of occupancy by the relevant governmental official.

We disagree. Thirty-five years ago we noted that the Statute of Repose reflects the legislative preference, from a public policy standpoint, for finality in construction-related claims, *see Rosenberg, supra,* 61 *N.J.* at 199, 293 *A.*2d 662, and thereafter "[w]e have read the statute broadly to accomplish this purpose[,]" *Russo Farms, Inc. v. Vineland Bd. of Educ.,* 144 *N.J.* 84, 116, 675 *A.*2d 1077 (1996). No intervening legislative action overcomes the Statute of Repose's direction that, in the circumstances presented, design or construction claims older than ten years are deemed never to have arisen.[2]

---

[2] Furthermore, the logic undergirding plaintiffs' suggestion for a fixed start date for Statute of Repose purposes stirs echoes of the now-rejected " 'completed and accepted rule' [which] provided that an architect's or a builder's liability for negligent design or construction of a structure 'terminated upon the completion of the professional's work and its acceptance by the property owner.' " *Greczyn, supra,* 183 *N.J.* at 10, 869 *A.*2d 866 (citation omitted). However, "[w]e repudiated the 'completed and accepted rule' outright in *Totten v. Gruzen,* 52 *N.J.* 202, 245 *A.*2d 1 (1968), a year after the enactment of *N.J.S.A.* 2A:14–1.1[,]" because the " 'tendency away from the completed and accepted rule was so clearly established as to make it reasonable to assume that the Legislature took that trend into account in enacting the statute.' " *Ibid.* (citation omitted). We

Nor are we otherwise persuaded by the purported parade of horribles that plaintiffs claim will arise from the application of the plain language of the Statute of Repose. In plaintiffs' view, setting the Statute of Repose's start date based on when each individual designer or contractor completes its portion of the work places an undue burden on a homeowner and would "create a multiplicity of different periods of repose for each project, depending on where in the work process the particular defendant's work took place." No doubt, if a plaintiff wishes to impose liability on an individual design professional or a sub-contractor, he or she will have to track when those design or construction services were completed and must file an action within ten years of that date. Yet, in the vast majority of instances, a plaintiff has retained a design professional to perform design and supervisory work throughout the entire construction process and until the entire job is completed. Similarly, in most cases, a plaintiff retains a general contractor responsible for the entire construction project, including the coordination of trades and sub-contractors, and that general contractor remains on the job—retaining overall responsibility for the furnishing of construction services—until the construction project is completed.[3] In those customary circumstances, plaintiffs' concerns are illusory.

The ills plaintiffs describe, although arising in their unique circumstances, nevertheless are idiosyncratic and, in large measure, of their own making. By asserting that they can purchase design or construction services on an individualized basis but still hold those designers and contractors liable as if they performed services throughout the construction project, plaintiffs wish to

described the Statute of Repose as "a legislative response seeking to delimit that greatly increased exposure, and to prevent 'liability for life' against contractors and architects." *Id.* at 10–11, 869 A.2d 866 (citations, internal quotation marks, and editing marks omitted).

[3] Indeed, that process usually includes the general contractor remaining on the job *after* the certificate of occupancy is issued in order to complete "punch-list" items.

have it both ways. Plaintiffs elected to forego hiring a design professional to oversee the implementation of the designer's plans, choosing instead to terminate the designer's services once the plans had been approved by the municipal construction official and to implement those plans on their own. Also, plaintiffs chose to act as their own general contractor, purchasing construction services from specialized contractors on a piecemeal basis without a separate contractor—other than plaintiffs themselves—bearing the responsibility for the retention and coordination of the trades, the acquisition of the periodic governmental approvals required, and the achievement of the timely and on-budget completion of the work. Further, well within the period of the Statute of Repose, plaintiffs were aware of, and corrected, all of the design and construction defects of which they now complain, and plaintiff's unexplained delay in filing suit undermines their attempt to avoid the consequences of the State of Repose. In sum, having chosen to purchase the design and construction services individually and having delayed the prosecution of their claims, plaintiffs properly are bound by their choices: by electing to assume responsibility for their construction project and failing to act in a timely manner, plaintiffs cannot be heard to complain as to the consequences of their choice.

## III.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.