938 A.2d 125

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
MANUEL B. ORTIZ, DEFENDANT–RESPONDENT.

Argued November 13, 2007—Decided January 17, 2008.

*Timothy M. Van Hise,* Assistant Prosecutor, argued the cause for appellant (*Wayne J. Forrest,* Somerset County Prosecutor, attorney).

*John P. McDonald* argued the cause for respondent (*McDonald & Rogers,* attorneys).

Justice RIVERA-SOTO delivered the opinion of the Court.

New Jersey's Code of Criminal Justice generally admits of two finite verdicts: guilty or not guilty. In the netherworld between these two findings, the Code also recognizes those instances where guilty acts in fact have occurred, but the accused, "at the time of such conduct[,] was laboring under such a defect of reason[ ] from disease of the mind as to not know the nature and quality of the act he was doing, or if he did know it, that he did not know what he was doing was wrong[.]" *N.J.S.A.* 2C:4–1. If those circumstances are proven, the verdict and judgment must reflect that the defendant has been acquitted by reason of insanity. *N.J.S.A.* 2C:4–3(b).

█ Unlike a straightforward acquittal, an acquittal by reason of insanity requires that the court "dispose" of the defendant in one of three ways. *N.J.S.A.* 2C:4–7; *N.J.S.A.* 2C:4–8(b). The least restrictive alternative—an unsupervised and unconditional release—occurs "[i]f the court finds that the defendant may be released without danger to the community or himself[.]" *N.J.S.A.* 2C:4–8(b)(1). Once the court determines that a defendant poses no danger to himself or to others and that he can be released without supervision and without conditions, the matter is concluded.

At the other end of the spectrum, "[i]f the court finds that the defendant cannot be released with or without supervision or conditions without posing a danger to the community or to himself,

it shall commit the defendant to a mental health facility ... to be treated as a person civilly committed." *N.J.S.A.* 2C:4–8(b)(3). Further, if a defendant acquitted by reason of insanity is committed, periodic in camera hearings are required to determine whether the commitment should continue. *State v. Krol,* 68 *N.J.* 236, 344 *A.*2d 289 (1975). *See also In re the Commitment of Edward S.,* 118 *N.J.* 118, 570 *A.*2d 917 (1990) (providing that *Krol* hearings, save for those adjudged not guilty of murder by reason of insanity, are to be held in camera); *State v. Fields,* 77 *N.J.* 282, 390 *A.*2d 574 (1978) (setting forth procedural requirements for *Krol* hearings); *N.J.S.A.* 30:4–27.1 to –27.23 and *Rules* 3:19–2 and 4:74–7 (governing commitment reviews).

This appeal requires that we address whether continuing procedural requirements apply to those in the middle ground between defendants acquitted by reason of insanity who are released without supervision and those who, because they pose a danger to the community or to themselves, must be committed. Specifically, the question presented in this appeal is "[i]f the court finds that the defendant may be released without danger to the community or to himself under supervision or under conditions," *N.J.S.A.* 2C:4–8(b)(2), must the court conduct periodic, *Krol*-type hearings although the defendant has not been committed?

The Appellate Division reasoned that "when a defendant is released pursuant to *N.J.S.A.* 2C:4–8(b)(2), the court possesses inherent authority to take all steps necessary to ensure that the defendant complies with all conditions of release[.]" *State v. Ortiz,* 389 *N.J.Super.* 235, 240, 912 *A.*2d 732 (App.Div.2006). It concluded, however, that, although post-release *Krol* hearings are discretionary in this setting, they are not mandatory, explaining that "*Krol* reviews are not authorized when the court concludes that a defendant may be released without danger to the community or himself with or without supervision or under conditions." *Ibid.* (citations and internal quotation marks omitted).

We concur with the Appellate Division's acknowledgement that, pursuant to *N.J.S.A.* 2C:4–8(b)(2), trial courts possess the inherent

authority to impose conditions that may include the procedural requirement of periodic reviews as envisioned by *Krol.* That said, we further conclude that the better and more logically consistent rule is to extend the requirement of mandatory periodic reviews under *Krol* to include all defendants acquitted by reason of insanity save for those released entirely without supervision or conditions. We therefore hold that *Krol* periodic review hearings must be held for those defendants acquitted by reason of insanity who are committed under *N.J.S.A.* 2C:4–8(b)(3) as well as for those who are released subject to supervision or conditions pursuant to *N.J.S.A.* 2C:4–8(b)(2), but not for those who are released without supervision or conditions as provided in *N.J.S.A.* 2C:4–8(b)(1).

## I.

The relevant facts here were never disputed; defendant Manuel Ortiz consented to the presentation of the State's case through the submission of an affidavit of probable cause and a police report, and did "not dispute the finding of guilt beyond a reasonable doubt based on those reports." As succinctly set forth in the affidavit of probable cause,

[o]n December 21, 2004, at approximately 10:00 am, Franklin Township Police Officer Steven Biancamano was dispatched to a 9–1–1 hang-up call at the defendant's home. Upon arriving, Officer Biancamano knocked on the door and was immediately confronted by the defendant, who was standing in the doorway, wielding a large butcher knife and shouting repeatedly at the officer "I'll kill you[.]" The officer immediately began to retreat, ordering the defendant to drop the knife and drawing his service revolver. Despite repeated pleas that the defendant drop the knife, the defendant continued to advance, quickly closing the distance between the two. A civilian eyewitness to this confrontation confirms that the defendant, with his hand raised, continued to rush at the police officer, who, while walking backwards and retreating, continued to order the defendant to stop. As the defendant continued to disregard the officer's entreaties to stop and continued to advance with the large knife in his raised hand, the officer fired one shot at the defendant, evidently in the leg. Notwithstanding that, the defendant continued to advance and the officer was forced to shoot a second time, this second shot stopping the defendant, who fell to the ground, whereupon Officer Biancamano, and the two back-up officers who soon arrived, administered [first aid] to the defendant until emergency rescue personnel responded.

A Somerset County Grand Jury indictment charged defendant with one count of first-degree attempted murder, in violation of *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:11–3; and one count of third-degree possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4(d). In his defense, defendant asserted that he was not guilty by reason of insanity. *See N.J.S.A.* 2C:4–3(a). In support of that defense, he presented an original report and a supplemental report from a psychiatrist, Dr. Daniel Greenwald, who opined that defendant was insane at the time of his offenses, and that he required medication, psycho-social therapy, and continued monitoring.

A bench trial was held over the course of two days. After stipulating to the State's case, defendant offered the testimony of Dr. Greenwald, who, in addition to repeating the contents of his earlier reports, described defendant's four prior psychiatric hospitalizations. In short, Dr. Greenwald diagnosed defendant as "suffering from paranoid schizophrenia, from general anxiety, and possible borderline mental retardation." He further opined that, to a reasonable degree of medical certainty, defendant was not criminally responsible for his conduct "because he was laboring ... under such a disease or defect of the mind that he did not know the nature and quality of the acts he was doing or that he didn't know what he was doing was right or ... wrong[.]" He also opined that defendant "had a mental defect and that the mental defect was the proximate cause of his behaving the way he did." Dr. Greenwald explained that "in order to not be an immediate danger to himself or others [defendant] must take his [anti-psychotic] medication," he "needs supervision for the medication, he needs therapy[,]" and he requires "professional monitoring to monitor his condition[,]" that is, "visits to psychiatrists or other mental health workers on a regular basis." In sum, Dr. Greenwald was of the view that if one "put together a package of antipsychotic drugs, monitoring of [defendant's] use of those drugs and the professional help that he needs, that he could be released to the community[.]" He concluded by recommending, at a minimum, "intensive outpatient treatment at a community health

center" coupled with psycho-social therapy and medical monitoring of both his medications intake and "to detect a worsening of his symptoms[.]" [1] The State agreed to "go[ ] along with Dr. Greenwald's findings."

At the close of the proofs, defendant requested "a finding ... of not guilty by reason of insanity." Acknowledging that such a finding would require that he "undergo a psychiatric examination by a psychiatrist of the prosecutor's choice[,]" *N.J.S.A.* 2C:4–8(a), defendant requested that, once acquitted by reason of insanity, he be released subject to the condition that he attend an intensive outpatient program. Significantly, during defendant's competence allocution prior to the trial court rendering its verdict, the following exchange occurred:

DEFENSE COUNSEL: Do you understand what we are talking about in court today? You have to say yes?

DEFENDANT: Yes.

DEFENSE COUNSEL: And I did explain to you before court today what we would be doing in court. We went over that this morning? Okay? Do you recall that? Do you recall that we are going to ask the Judge to find you not guilty by reason of insanity? Do you understand that? You got to say yes.

DEFENDANT: Yes.

DEFENSE COUNSEL: And you understand that the Judge is going to sentence you, but it's not going to be to jail? Do you understand that?

DEFENDANT: Yes.

DEFENSE COUNSEL: All right. And then *during whatever time that the sentence that the Judge gives you, you are going to be subject to court review on what we call a Krol status. Do you remember that conversation?*

DEFENDANT: *Yes.*

. . . .

DEFENSE COUNSEL: *Do you understand that you are going to have to come back occasionally to the Court for review of your status?*

DEFENDANT: *Yes.*

DEFENSE COUNSEL: *And the Court from time to time, because you are on what we call Krol status, will have to review reports to make sure you can still stay out and function in the community. Do you understand that?*

---

[1] Defendant also offered his mother's testimony, who volunteered to be responsible for defendant remaining on his medication and for reporting any failure directly to the trial court.

DEFENDANT: *Yes.*

[ (Emphasis supplied).]

The trial court "enter[ed] a verdict of not guilty by reason of insanity based on the testimony offered by [Dr. Greenwald] which was not really contested[.]" It found that defendant was "not presently a danger to self or others provided, of course, he continues with the appropriate psychiatric medication, care and treatment" and "assign[ed] him to [an] intensive outpatient program[.]" The trial court acknowledged that "since we are entering a not guilty under *Krol*, we'll have to review this case in six months." It noted that "we'll have to put this on the regular scheduled *Krol* cases which means refer it over to the Surrogate[.]"

Despite the representations he made during his competence allocution, defendant later contested whether "the periodic review required by *Krol* applies to the [d]efendant[.]" He argued that "the periodic review under *Krol* only applies to a ... person [committed] under [*N.J.S.A.*] 2C:4–8(b)[ (3).]" In essence, defendant argued that while the trial court may exercise its discretion and require that a defendant released under *N.J.S.A.* 2C:4–8(b)(2) comply with conditions—including that he return to court for periodic reviews—the mandatory imposition of the *Krol* obligation of periodic judicial review is inapplicable in this setting.

The State objected. In the State's words, "[t]he Court has an obligation to the public to [e]nsure the conditions imposed [on] the [d]efendant's liberty are complied with." It urged that *Krol*-type periodic reviews should be required for dispositions under *N.J.S.A.* 2C:4–8(b)(2) because, "unless vigilance is maintained [concerning] compliance with the conditions, then the Court doesn't know when to lessen them, lessen the restrictions upon his liberty or even to eliminate them." It contended that "it would be irresponsible for the Court not to continue to monitor this matter" and asked that the trial court "impose the ever so slight burden of meaningful periodic review upon this [d]efendant."

Although it earlier had concluded to the contrary, the trial court sustained defendant's arguments. It reasoned that "the review process is there for a review of a person who has been confined to [the] hospital to make sure that they just don't sit there forever, and that everybody forgets about them." It "agree[d] with the defense, this is not a situation where you have a *Krol* review. He's not been confined for dangerousness to self or others." Contrasting between a commitment and defendant's supervised conditional release, the trial court noted that defendant is "in need of further treatment and his review thereafter is subject to the civil procedure that's referred to in *Court Rule* 3:19–2." The trial court then ordered that defendant be adjudged "not guilty on all charges by reason of insanity pursuant to *N.J.S.A.* 2C:4–1" and that, "pursuant to *N.J.S.A.* 2C:4–8(b)(2), [defendant] shall be released to the custody of his mother ... and the outpatient program[.]"

Considering the State's appeal, the Appellate Division defined the issue presented as "whether a defendant who is adjudicated not guilty by reason of insanity, *N.J.S.A.* 2C:4–1, and released, pursuant to *N.J.S.A.* 2C:4–8(b)(2), may be subject to periodic *Krol* reviews as a condition of release." *Ortiz, supra,* 389 *N.J.Super.* at 236–37, 912 *A.*2d 732 (footnote omitted). The panel "affirm[ed] the trial judge's decision not to subject defendant to *Krol* reviews[,]" declaring itself

> satisfied that such reviews are only authorized when the court determines that the defendant cannot be released with or without supervision or conditions without posing a danger to the community or to himself and commits the defendant to a mental health facility to be treated as a person civilly committed. *Krol* reviews are not authorized when the court concludes that a defendant may be released without danger to the community or himself with or without supervision or under conditions.
>
> [*Id.* at 239–40, 344 *A.*2d 289 (citations and internal quotation marks omitted).]

The panel nevertheless conceded that "when a defendant is released pursuant to *N.J.S.A.* 2C:4–8(b)(2), the court possesses inherent authority to take all steps necessary to ensure that the defendant complies with all conditions of release." *Id.* at 240, 344 *A.*2d 289. In the end, the panel acknowledged the wisdom of

imposing such additional conditions, concluding that they "would protect the interests of the defendant and the safety of the public." *Ibid.*

The State sought certification of the Appellate Division's judgment, which was granted. 190 *N.J.* 256, 919 *A.*2d 849 (2007).

## II.

The State argues that it is error to exempt defendant from periodic judicial reviews. In the State's view, a court's responsibility for public safety requires the imposition of periodic judicial reviews on a defendant conditionally released following an acquittal by reason of insanity. It contends that a periodic review geared to evaluate the efficacy of the conditions imposed on a defendant protects both the defendant and the State. It notes that this case presents a poignant example of the need for continued, periodic judicial oversight of a defendant adjudged not guilty by reason of insanity who is released under supervision or conditions: within six months after the trial court relieved defendant from continuing judicial oversight, defendant assaulted his father with a hammer.[2]

Defendant, on the other hand, argues that periodic judicial review of conditionally released defendants found not guilty by reason of insanity is not authorized by statute, rule or case law. He claims that appropriate mechanisms—that is, civil commitments—already exist to deal with those who, having been conditionally released, become a danger to themselves or to others.

---

[2] Although defendant's father managed to escape any harm, that assault resulted in defendant's arrest. He was charged with first-degree attempted murder, in violation of *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:11–3; third-degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1(b); third-degree possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4(d); fourth-degree unlawful possession of a weapon, in violation of *N.J.S.A.* 2C:39–5(d); and third-degree terroristic threats, in violation of *N.J.S.A.* 2C:12–3(b). The record indicates that defendant remains confined to a psychiatric hospital as a result of those charges.

III.

A.

Our inquiry is a narrow one: in this case, we are asked to ascertain the meaning of *N.J.S.A.* 2C:4–8(b). In particular, we must cull through that statute and determine whether differences in treatment exist among the three statutorily created subcategories of defendants: unconditionally released defendants, conditionally released defendants, and committed defendants. In performing that task, we are guided by well-established canons of construction.

We recently explained that "[i]t is not the function of this Court to rewrite a plainly-written enactment of the Legislature or presume that the Legislature intended something other than that expressed by way of the plain language." *Johnson v. Scaccetti,* 192 *N.J.* 256, 275, 927 *A.*2d 1269 (2007) (citations, internal quotation marks and editing marks omitted). We cautioned that "[o]nly if the statutory language is ambiguous should the court resort to extrinsic interpretative aids, such as legislative history, canons of construction, or the policy considerations behind the legislation." *Id.* at 275–76, 927 *A.*2d 1269. Determining the meaning of a statute requires compliance with cardinal rules of interpretation:

> When interpreting a statute, our overarching duty is to construe and apply the statute as enacted. We do so by applying the following principles. First, a court should not resort to extrinsic interpretative aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation. That said, if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction. We have explained that we may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language. We are guided by first principles: our analysis begins with the plain language of the statute.
>
> [*Daidone v. Buterick Bulkheading,* 191 *N.J.* 557, 565–66, 924 *A.*2d 1193 (2007) (citations, internal quotation marks and editing marks omitted).]

A plain language examination of the relevant statutory scheme discloses the following. The Legislature has commanded that, "[i]f a defendant is acquitted by reason of insanity, the court shall

dispose of the case as provided for in [*N.J.S.A.*] 2C:4-8[.]"
*N.J.S.A.* 2C:4-7. That section—*N.J.S.A.* 2C:4-8—first provides
that "[a]fter acquittal by reason of insanity, the court shall order
that the defendant undergo a psychiatric examination by a psychi-
atrist of the prosecutor's choice." *N.J.S.A.* 2C:4-8(a). After
addressing those instances where a defendant is unwilling to
participate in the court-ordered psychiatric examination, the Leg-
islature allowed that "[t]he defendant ... may also be examined
by a psychiatrist of his own choice." *Ibid.*

■  Once the psychiatric examination stage is completed, the
Legislature further provided that

> [t]he court shall dispose of the defendant in the following manner:
>
> (1) If the court finds that the defendant may be released without danger to the
> community or himself without supervision, the court shall so release the defendant;
> or
>
> (2) If the court finds that the defendant may be released without danger to the
> community or to himself under supervision or under conditions, the court shall so
> order; or
>
> (3) If the court finds that the defendant cannot be released with or without
> supervision or conditions without posing a danger to the community or to himself, it
> shall commit the defendant to a mental health facility ... to be treated as a person
> civilly committed. .... The defendant's continued commitment, under the law
> governing civil commitment, shall be established by a preponderance of the
> evidence, during the maximum period of imprisonment that could have been
> imposed, as an ordinary term of imprisonment, for any charge on which the
> defendant has been acquitted by reason of insanity. Expiration of that maximum
> period of imprisonment shall be calculated by crediting the defendant with any
> time spent in confinement for the charge or charges on which the defendant has
> been acquitted by reason of insanity.
>
> [*N.J.S.A.* 2C:4-8(b).]

There are, then, three statutorily authorized dispositions for a
defendant who has been acquitted by reason of insanity: uncondi-
tional/unsupervised release, conditional/supervised release, and
commitment.

■  That statutorily authorized paradigm is accretive. If a
court determines that, without supervision or conditions, a defen-
dant acquitted by reason of insanity is neither a danger to himself
or others, an unconditional release shall be ordered. *N.J.S.A.*
2C:4-8(b)(1). That unconditional release ends the matter, and the

defendant is discharged. However, if the court determines that, with supervision or under conditions, a defendant acquitted by reason of insanity does not pose a danger to himself or to others, that court must release the defendant subject to the required supervision and/or conditions. *N.J.S.A.* 2C:4–8(b)(2). Finally, if the court determines that, even with supervision or under conditions, a defendant acquitted by reason of insanity remains a danger to himself or to others, that defendant must be committed to a mental health facility.[3] *N.J.S.A.* 2C:4–8(b)(3). Continued confinement under a commitment to a mental health facility requires periodic review hearings before the Superior Court. *State v. Krol,* 68 *N.J.* 236, 344 *A.*2d 289 (1975). *See also R.* 3:19–2 and *R.* 4:74–7 (setting forth procedures for commitment and continued commitment hearings).

### B.

A defendant acquitted by reason of insanity who is unconditionally released is thus discharged, and a defendant acquitted by reason of insanity who is committed is entitled to periodic judicial review of his confinement. However, neither the statute, nor the *Rules,* nor our case law explicitly address the court's obligations in respect of a defendant who, having been acquitted by reason of insanity, is conditionally released. The Appellate Division ruled that, while a trial court has the inherent authority to require post-conditional release hearings to supervise that release, post-conditional release hearings patterned after *Krol* were not required. *State v. Ortiz,* 389 *N.J.Super.* 235, 240, 912 *A.*2d 732 (App.Div. 2006). Our examination of the statute, its purposes, and our case law interpreting them leads us to a different result. We conclude that defendants who have been acquitted by reason of insanity and who are conditionally released are subject to periodic judicial

---

[3] That commitment must be to a civil mental health facility, as "[n]o person committed under [*N.J.S.A.* 2C:4–8] shall be confined within any penal or correctional institution or any part thereof." *N.J.S.A.* 2C:4–8(c).

review as originally mandated by *Krol* and as codified in *Rule* 4:74–7.

A defendant who has been acquitted by reason of insanity and is conditionally released pursuant to *N.J.S.A.* 2C:4–8(b)(2) stands far closer to a committed defendant who has been acquitted by reason of insanity under *N.J.S.A.* 2C:4–8(b)(3) than to an unconditionally released defendant who has been acquitted by reason of insanity as provided in *N.J.S.A.* 2C:4–8(b)(1). The legislatively recognized difference among these categories rests in the defendant's dangerousness to himself or others. Viewed through that prism, unconditionally released defendants lack a unique characteristic the others possess: unconditionally released defendants are *not* a danger to themselves or to others. In contrast, conditionally released or committed defendants share a common thread: they are a danger to themselves or to others, although the danger presented by conditionally released defendants is mitigated by the supervision and/or conditions governing the defendant's release, while the danger presented by committed defendants is mitigated by their commitment. The Appellate Division's analysis aggregated unconditionally released and conditionally released defendants in one category and distinguished them from committed defendants. *Ortiz, supra,* 389 *N.J.Super.* at 240, 912 *A.*2d 732. Because conditionally released defendants share far more characteristics with committed defendants than with unconditionally released defendants, we reject that grouping.

Also, other important considerations militate in favor of treating conditionally released defendants and committed defendants in a similar manner. For example, in *Krol* we emphasized that "[o]nce the court has determined that defendant is mentally ill and is dangerous to himself or to others, it must formulate an appropriate order." *Krol, supra,* 68 *N.J.* at 261, 344 *A.*2d 289. We noted that "this is an exceedingly difficult task, one calling for a high degree of judicial flexibility and imagination." *Ibid.* We explained that

[t]he object of the order is to impose that degree of restraint upon defendant necessary to reduce the risk of danger which he poses to an acceptable level. Doubts must be resolved in favor of protecting the public, but the court should not, by its order, infringe upon defendant's liberty or autonomy any more than appears reasonably necessary to accomplish this goal. Nonetheless, where the public cannot be adequately protected by any practical lesser restraint, the court is justified in ordering defendant institutionalized in an appropriate public psychiatric hospital. Court imposed restraints must, of course, always be coupled with a corresponding opportunity for care and treatment.
[*Ibid.*]

■ Tellingly, when considering whether *Krol's* holding should be retroactive, we made clear that it applied both to those defendants who, following an acquittal by reason of insanity, were committed to a mental health facility, as well as to those who had been committed but later were conditionally released from commitment pursuant to *State v. Carter*, 64 *N.J.* 382, 316 *A.*2d 449 (1974). *Id.* at 267, 344 *A.*2d 289. Furthermore, *Krol* addresses the necessary tension between public safety and a defendant's liberty interests; for that reason *Krol* enjoins that "[t]he order [of commitment] should be molded so as to protect society's very strong interest in public safety but to do so in a fashion that reasonably minimizes infringements upon defendant's liberty and autonomy and gives him the opportunity to receive appropriate care and treatment." *Id.* at 257–58, 344 *A.*2d 289 (footnote omitted). In those fundamental respects, there is no substantive difference between those who are conditionally released after a commitment and thereafter are subject to continued periodic judicial review hearings under *Krol*, and those who are conditionally released without first being committed; although to a degree less than in a commitment, a conditional release nevertheless impairs a defendant's liberty. In either case, it remains the obligation of the court to manage and minimize the degree of danger a defendant may present to himself and to others while, at the same time, balancing the curtailment of defendant's liberty interests.

■ Of necessity, this is not a static determination frozen in time, but a dynamic one that "involves a delicate balancing of

society's interest in protection from harmful conduct against the individual's interest in personal liberty and autonomy." *Id.* at 261, 344 *A.2d* 289. This continuing process pursues a discrete, tangible yet often elusive goal: the day a defendant acquitted by reason of insanity can be unconditionally released. Unconditionally released defendants are precisely that: unconditionally released. For that reason, continued, periodic judicial review of their status, progress and prognosis is unnecessary. In contrast, those who are conditionally released or committed must be subject to periodic judicial review to determine whether the commitment, or the supervision or conditions, must be continued. For those reasons, we hold that defendants acquitted by reason of insanity who are conditionally released pursuant to *N.J.S.A.* 2C:4–8(b)(2) must be subject to periodic *Krol* hearings akin to those provided to defendants acquitted by reason of insanity who have been committed under *N.J.S.A.* 2C:4–8(b)(3).

## IV.

The judgment of the Appellate Division is reversed, and the cause is remanded to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.